NATIONAL SURETY CORPORATION, PLAINTIFF-RESPOND-
    ENT, v. ARTHUR F. BARTH, INDIVIDUALLY, AND
    TRADING AS BARTH CONTRACTING COMPANY ET
    ALS., DEFENDANTS-APPELLANTS, AND CHARLES
    MARTINI AND FRANK MARTINI, PLAINTIFFS-RE-
    SPONDENTS, v. ARTHUR F. BARTH, DEFENDANT.

Argued October 1, 1951—Decided November 5, 1951.

*Mr. Chester K. Ligham,* Deputy Attorney-General, argued the cause for the appellants, J. Lindsay De Valliere, Director of the Division of Budget and Accounting and Charles R. Erdman, Jr., Administrator of Public Housing and Development Authority (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney).

*Mr. Herman D. Ringle* argued the cause for the Division of Employment Security of the Department of Labor and

Industry of the State of New Jersey (*Mr. Charles A. Malloy,* attorney).

*Mr. Charles A. Rooney* argued the cause for the respondent National Surety Company.

The opinion of the court was delivered by

BURLING, J.  The appeal in this civil action presents one primary question: whether the State of New Jersey may be sued for money due under a contract entered into between a contractor and the Administrator of the Public Housing and Development Authority of the State of New Jersey (hereinafter called the Administrator) under *L.* 1946, *c.* 323 (*N. J. S. A.* 55:14G–1 *et seq*).

PROCEDURE

The proceedings have a complicated appearance and it is necessary to dissect them in order to cut through to clarity. One proceeding was initially instituted in the Law Division and the other in the Chancery Division of the Superior Court. These actions were consolidated on December 19, 1950, and thenceforth the consolidated action was continued as one suit within the Chancery Division. After consolidation, the defendants-appellants moved for judgment of dismissal of the complaint of National Surety Corporation, the plaintiff in the Chancery action (hereinafter called the plaintiff). This motion was denied by order of the Chancery Division on March 30, 1951, and the defendants-appellants addressed this appeal from that interlocutory order to the Appellate Division of the Superior Court.  Prior to hearing there, certification was granted by us upon our own motion.

One Arthur F. Barth (hereinafter called Barth), a building contractor, in 1947 and 1948 entered into two contracts with the Administrator for alteration, rehabilitation and repair of certain public housing accommodations in the City of Jersey City.  In connection therewith, and under the requirements of said contracts, Barth as principal and the

plaintiff as surety executed and delivered to the Administrator two performance bonds, to secure *inter alia*, payment of said principal or by said surety all the lawful claims of subcontractor, materialmen, laborers, persons, firms or corporations incurred in connection with the performance of Barth's two above-mentioned contracts with the Administrator. Barth defaulted in performance in failing to comply with the terms of these contracts by failing to pay for the work, labor and materials performed or furnished thereunder. Thereafter, various subcontractors, materialmen and laborers made claim on the plaintiff under its liability as surety on the performance bonds. On or about March 25, 1949, the Administrator is alleged to have accepted the projects covered by the two contracts. Plaintiffs-respondents Charles Martini and Frank Martini (hereinafter called the Martinis) obtained a judgment against Barth in January, 1950, and attempted to reach the balance of the contract price held by the Administrator through the medium of a levy under a writ of execution issuing from the Superior Court. Thereafter the Martinis obtained in the Law Division of the Superior Court an order directed to Barth and to the Administrator (designated therein as Veterans Housing Administration of the Department of Economic Development of the State of New Jersey) to show cause why the court should not order the Administrator as garnishee to pay the Martini judgment under the levy aforesaid (the proceedings on, and stemming from, this order to show cause are hereinafter referred to as the law action). On May 4, 1950, the plaintiff filed its complaint in the Chancery Division of the Superior Court in which the foregoing matters are substantially alleged (this complaint instituted what is hereinafter referred to as the Chancery action). The defendants to this Chancery action included Barth, the Administrator, the Director of the Division of Budget and Accounting (impleaded as State Commissioner of Taxation, hereinafter called the Director), the Martinis and other creditors of Barth. In its complaint, the plaintiff sought, *inter alia*, the following relief: that it be

exonerated to the extent that the funds held by the Administrator be applied to the unpaid demands of the several defendants; that it be subrogated to the extent that it had paid claims of certain of Barth's creditors; that the Administrator pay the funds due Barth under the contracts into court; that the several defendants interplead their rights to such fund; that the unpaid defendants prove the validity of their claims; that the plaintiff be discharged of all liability to the unpaid defendants; that the Martinis be restrained from further proceedings in the law action; that the funds be marshalled in court to provide payment to those lawfully entitled thereto.

On February 2, 1950, the Division of Employment Security had filed a certificate of debt with the Clerk of the Superior Court showing Barth's liability accrued under the unemployment compensation law for the period of February 17, 1946, to May 1, 1947 (contributions, interest to January 30, 1950, and penalties). This certificate was docketed in the judgment record in the Superior Court pursuant to the provisions of *R. S.* 43 :21–14(*e*) as amended by *L.* 1938, *c.* 59; *L.* 1939, *c.* 309; *L.* 1940, *c.* 97; *L.* 1944, *c.* 80; *L.* 1945, *c.* 307 and *L.* 1948, *c.* 79. Similar certificates were docketed as judgments against Barth on June 6, 1950, and June 8, 1950.

The order to show cause directed to the Administrator as garnishee in the law action was dismissed by order of the Law Division of the Superior Court, for the reason that the Administrator as garnishee did not admit the debt, *R. S.* 2 :26–180, and on December 19, 1950, the Law Division of the Superior Court entered an order in the law action correcting the record in those proceedings to show Barth's debt to the State (the Division of Employment Security) and permitting the Division of Employment Security to intervene. On the same date an order was entered permitting the plaintiff to intervene in the law action, transferring the law action to the Chancery Division, consolidating that action with the Chancery action and requiring the Division of Employment Security to answer, or move to dismiss, the plaintiff's complaint.

The next step taken after consolidation was that which resulted in this appeal. The Administrator, the Director and the Division of Employment Security moved for judgment of dismissal of the plaintiff's complaint, as to them, on two grounds, namely that the action consituted a suit against the State of New Jersey to which the State had not consented, and that the complaint failed to state a claim against the State upon which relief could be granted because the funds in the hands of the Administrator constituted a fund in control of the State against which the State could exercise a right of setoff (*viz.*, the unemployment compensation judgment claims above mentioned). The Chancery Division of the Superior Court by order filed March 30, 1951, denied the motion to dismiss but therein granted leave to the Administrator, the Director and the Division of Employment Security (sometimes collectively referred to herein as the State Agencies) to answer. On April 11, 1951, the court entered an order denying a motion made by the plaintiff to require the State to pay the balance of the contract price into court. The plaintiff has not appealed from this order. The State Agencies, on April 27, 1951, filed notice of appeal from the order denying their motion to dismiss to the Appellate Division of the Superior Court. This was an interlocutory appeal under *Rule* 4:2–2(a) (3) since jurisdiction of the person was in question. The appeal prior to hearing before the Appellate Division was certified by this court on its own motion as hereinbefore stated.

### SUBSTANTIVE QUESTIONS

The question to be determined here is whether the State may be sued for contractual balances under a contract entered into under *L.* 1946, *c.* 323.

The State Agencies contend and the plaintiff agrees that the State may not be sued without its consent. However, the plaintiff contends that the State has consented to suit on contracts entered into by the Administrator under *L.* 1946, *c.* 323 (*N. J. S. A.* 55:14G–1, *etc.*), *supra*, because that act

must be construed *in pari materia* with *L.* 1944, *c.* 85 (*N. J. S. A.* 52:27C–1 to 60) which the plaintiff contends gives specific consent to such suits. *L.* 1944, *c.* 85 created the Department of Economic Development of the State (now the Department of Conservation and Economic Development by virtue of *L.* 1948, *c.* 448, *N. J. S. A.* 13:1B–1 *et seq.*) and created as an integral part thereof, a "public housing and development authority," as follows:

"Within the department there shall be a 'public housing and development authority,' a body politic and corporate, with power to sue and be sued, to have a seal, and to have corporate succession, hereinafter referred to as 'the authority.' The powers and duties of this authority shall be vested in and may be exercised by the commissioner." *L.* 1944, *c.* 85, *Art.* 3, *p.* 175, *sec.* 22. (*N. J. S. A.* 52:27C–22.)

*L.* 1946, *c.* 323 (*N. J. S. A.* 55:14G–1 *et seq.*) was emergency legislation, designed to ameliorate the acute public emergency that existed at the time of its enactment in the serious shortage of dwelling accommodations for veterans of World War II and other people of this State (*sec.* 1; *N. J. S. A.* 55:14G–1). The power to effectuate this emergency legislation was specifically lodged in the "public housing and development authority in the Department of Economic Development" (*sec.* 3; *N. J. S. A.* 55:14G–3). The statute defines the term "administrator" as used throughout its provisions to be "the administrator of the public housing and development authority who is the Commissioner of the Department of Economic Development" (*sec.* 2 as amended by *L.* 1947, *c.* 52, *sec.* 1; *N. J. S. A.* 55:14G–2). The Administrator was given broad powers, including the right of eminent domain (*sec.* 8; *N. J. S. A.* 55:14G–8). Title to all property acquired (*sec.* 7; *N. J. S. A.* 55:14G–7) and materials and equipment incorporated in projects under this act (*sec.* 14; *N. J. S. A.* 55:14G–14) vested in the State.

The State Agencies contend that the consent to suit set forth in sec. 22 of the 1944 act (*supra*) is not applicable to acts performed by the Administrator under the 1946 legisla-

tion because the latter act created a special fund for the limited purposes contained therein, from which disbursement may be made only through the exercise of discretion on the part of the Director of the Division of Budget and Accounting of the State. The State thus adverts to *L.* 1946, *c.* 323, *sec.* 23 (*N. J. S. A.* 55:14*G*–23) which reads:

"The sum of six million dollars ($6,000,000.00) is hereby appropriated out of the Post-War Reserve Account in the General State Fund established by 'An Act to create a post-war reserve account in the General State Fund' (*P. L.* 1944, *r.* 218), together with moneys derived from the sale of bonds pursuant to a bill now pending in the Legislature creating a debt of the State in the sum of thirty-five millions dollars ($35,000,000.00) to provide housing for veterans of World War II and other people of the State, if the same becomes a law by sanction of the people, to establish and provide an emergency housing fund. The moneys in such fund shall be available for the payment of the cost of acquisition of real and personal property; any rents under lease; construction, reconstruction, alteration, repair or improvement, razing, salvage or transportation; maintenance, operations and management; equipment, furniture and furnishing, vehicles; services and expenses; all costs in connection with and for work appurtenant thereto, including incidental expenses in accomplishing the purposes of this act, and to defray the administrative expenses of the Authority required by the provisions of this act. No money shall be paid out of such fund except on warrant of the State Commissioner of Taxation and Finance on vouchers certified or approved by the Administrator."

The State Agencies' contention in this respect must be resolved against them. The construction of the 1946 act so sought by the State would constitute a limitation on the power of the Administrator (to sue and be sued), in contravention of the express provision of sec. 25 of the act (*N. J. S. A.* 55:14*G*–25). The clear intendment of the 1946 act is to enlarge and not to limit the scope of the powers given the Administrator under the 1944 act. These acts are *in pari materia* and therefore must be construed together. A third statute, *in pari materia*, should also be considered. This statute was *L.* 1946, *c.* 324, *pp.* 1363-1372 adopted by the people of this State at the general election on November 5, 1946. It was therein provided that "Bonds of the State of

New Jersey" were authorized in the sum of $35,000,000
(*sec.* 2) and were made a "direct obligation of the State of
New Jersey" (*sec.* 5). The Legislature thus in these three
statutes provided that the State should pay for the emergency
public housing projects out of moneys raised on general obli-
gations of the State (as opposed to bonds issued by a "public
corporation"), that it should own the projects in the name of
the State (and not in the name of the Authority), but that
details should be handled by the Administrator as its agent,
through whom it could be sued. There is no indication that
either the letter or the spirit of the 1946 legislation was to
qualify or limit the specific provisions of the 1944 legislation
which gave the consent to suit. Compare *Glick v. Trustees
of Free Public Library,* 2 *N. J.* 579, 584, 585 (1949).

The State Agencies' argument that the court may not
order the Director to perform his duty under this statute is
not germane to the question of consent to suit. Logic should
not permit a holding that where the State has consented to
submit a matter for judicial determination, the court is duty
bound to refuse to grant relief because in the ordinary course
of events such matter was one for submission to administrative
determination. Where a state has consented to suit under
statutes such as here involved, it may not defeat its consent
merely by asserting that one of its officers has the sole power
to make the determination involved in the suit to which it
has thus consented. The claimant as an element of its case,
however, is bound by the ordinary requirement that it prove
the amount due under the contract and that the certificate
of performance has been issued (in this case such would in-
clude the warrant of the Director on vouchers certified or
approved by the Administrator) or that it is arbitrarily with-
held from it. *Grobarchik v. Nasa Mortgage and Investment
Co.,* 117 *N. J. L.* 33, 34 (*Sup. Ct.* 1936); *Williams v.
Hirshorn,* 91 *N. J. L.* 419, 420 (*Sup. Ct.* 1918); 54 *A. L. R.*
1256.

The remaining questions raised by the State Agen-
cies on this appeal relate to matters considered by the trial

court upon the motion to dismiss for failure of the plaintiff's complaint to state a claim upon which relief could be granted. Under *Rule* 3:12–2 such motion may be treated as one for summary judgment under *Rule* 3:56 if matters outside the pleading are presented to and not excluded by the trial court. The record indicates that this course of procedure was pursued although express reference to these rules was not made. Under *Rule* 3:56–4 the trial court, at the hearing of the motion, by examining the pleadings and the evidence before it *shall if practicable* ascertain what material facts exist without substantial controversy and direct such further proceedings in the action *as are just*. *Rule* 3:56–5 provides that leave to proceed may be given upon such terms as may be deemed just. The action of the court in denying the State Agencies' motion amounted to a determination that it was impracticable upon the pleadings and affidavits then before it to ascertain that any material facts existed without controversy and that the State Agencies should file an answer. This determination was within the trial court's discretion, under *Rules* 3:56–4 and 5, *supra*. Under the circumstances, the questions raised, other than that the State has given its consent to be sued, as is hereinbefore established, are not ripe for determination by this court.

For the reasons above stated the order of the Chancery Division of the Superior Court denying defendants-appellants' motion for judgment of dismissal is hereby affirmed and the record is remanded to that court for further proceedings in ordinary course in the cause.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.