The board of education of the city of Linden contracted with L.M. Steele Company for the building of school No. 4, for the price of $85,430, and American Surety Company gave the statutory bond for due performance. The contractor quit and was adjudged insolvent and a receiver was appointed by the court after the architects' first estimate of work done, $2,431. The surety company was called upon to finish the job and undertook the task at a cost of $84,488. The board paid the estimate money into court under a decree that the surety company and the receiver interplead.
The surety company is entitled by legal as well as contractual subrogation, to the contract price or as much thereof as saves it harmless in completing the work. Board of Education *Page 208 of the City of Elizabeth v. Zinc, 101 N.J. Eq. 78. The money in court is available for that purpose. The contract is an entirety; the estimate was an installment of the contract price, due, but retained by the school board when the contractor abandoned the works. It was the right of the school board in law and under the terms of the contract to retain the money for its own protection and the right inured to the surety company. The receiver took cum onere. Of the money in court the surety company is entitled to $1,489 — the difference between the cost of completion, $84,488, and the balance due on the contract, $82,999.
The surety company lays claim to the difference between $1,489 and the amount in court, because it paid approximately $1,000 to creditors of the contractor who furnished materials on the job. The creditors had no liens; their statutory claims were filed after the receiver in insolvency was appointed. MackManufacturing Co. v. Citizens Construction Co., 85 N.J. Eq. 331; affirmed, 86 N.J. Eq. 254. The surety company was obligated by its bond to pay these creditors and had they liens, the surety would have been subrogated to the liens as against the receiver. It was so held in the Zinc Case. Here, as there, there are no liens to which there can be subrogation.
The surety company also claims the money difference to reimburse itself for payments of the contractor's debts to material men, under a contractual right of subrogation. In the application for the bond and as indemnity to the surety against loss by reason of the bond, the contractor stipulated:
"* * * and the indemnitor further agrees in the event of any breach or default on his part in any way of the provisions of the contract covered by said suretyship that the said surety, as surety, shall be subrogated to all the rights and properties of the indemnitor in such contract, including deferred payments and any and all moneys and securities that may be due and payable at the time of such default on this or any other contract of the indemnitor or any one or more of them on which the surety is or may become surety, or on account of extra work or materials supplied in connection *Page 209 
therewith, or that may thereafter become due and payable on account of said contract or any other contract of the indemnitor or any one or more of them on which the surety is or may become surety."
The contractor abandoned the contract before the receiver was appointed and the surety company's right to be subrogated attached forthwith. And if there has been no breach or default until after the receiver had been appointed, the right to subrogation would have been superior to rights acquired by the receiver, for he stands in the shoes of the contractor and took subject to the equities.
The agreement for subrogation is, in effect, an equitable assignment, self-executing and operative upon an event that has happened. Upon abandonment of the work, the subrogation agreement became beneficial in the surety company as indemnity against loss through the contractor's default not only in its obligation to the school board, but for all defaults for which the surety was responsible, one of which was to pay labor and materialmen. Not only is it implied that the contractor would pay them, but the contract provides that the contractor furnish a bond that he would do so and the implication was as firmly a part of the contract as if the fact had been expressed, and the failure to pay was as clearly a breach "of the provisions of the contract covered by said suretyship" within the meaning of the indemnity agreement as if it had specifically recited the default. Vice-Chancellor Buchanan in John W. Barwell, Inc., v. Vail,108 N.J. Eq. 117, reached a different conclusion under somewhat different circumstances. The parties to that suit were the same as in this one; the contract and bond were the same except that they were for other work. There the receiver, not the surety, finished the contract and was awarded the proceeds as against the claim of the surety company for money laid out to pay the contractor's debts to labor and materialmen and the Vice-Chancellor held that the right under the agreement of subrogation did not come into operation by the contractor's failure to pay labor and materialmen; that that was a breach of the bond, not of the contract. *Page 210 
Had the receiver in the instant case finished the work, thereby realizing the contract price, the surety company would not have been accorded the fruits of his efforts because of a prior naked interest. He then, by his labor, would have earned a superior equity. Here the surety company developed the fund that sustains its priority. Equity favors the diligent.
Point is also made that the indemnity agreement is invalid because it was not under the corporate seal and the president, as such, was without authority to sign it. The answer to that is that the agreement was given in the transaction of corporate business delegated to the president to perform and of which the company accepted the benefit. The fact that it was current trade of the corporation raises a presumption of the president's authority; the corporate seal would add nothing. A corporate seal is not essential to an indemnity agreement.