20 N.J. Super. 100 (1952)
89 A.2d 104
NATIONAL SURETY CORPORATION, PLAINTIFF,
v.
ARTHUR F. BARTH, INDIVIDUALLY, & C., ET AL., DEFENDANTS, AND CHARLES MARTINI, ET AL., PLAINTIFFS,
v.
ARTHUR F. BARTH, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 28, 1952.
*103 Mr. Charles A. Rooney for the plaintiff National Surety Corporation.
Mr. Chester K. Ligham for the defendants Charles R. Erdman, Jr., Administrator of Public Housing and Development Authority, Department of Economic Development of the State of New Jersey, and J. Lindsay De Valliere, State Commissioner of Taxation and Finance (Mr. Theodore D. Parsons, Attorney-General of New Jersey).
Mr. Herman D. Ringle, for the defendant Division of Employment Security of the Department of Labor and Industry (Mr. Charles A. Malloy, attorney).
Mr. Louis Eisenstein, for Frank Martini and Charles Martini (Messrs. Eisenstein & Eisenstein, attorneys).
Mr. Joseph Mocco, for defendant Moser Kueng Lumber Co.
Mr. Charles W. Kappes, for defendant Alfred Marciano (Mr. A. Michael Lepore, attorney).
Mr. John J. Corcoran, for defendant United States of America (Mr. Grover C. Richman, Jr., United States attorney).
STANTON, J.S.C.
Arthur F. Barth, one of the defendants, entered into two contracts with the Administrator of the Public Housing and Development Authority of the State of New Jersey, hereinafter called the Administrator, for the rehabilitation of certain dwelling houses. He defaulted and National Surety Corporation, the surety on his performance bonds, and hereinafter called the plaintiff, arranged for the completion of the work. It seeks exoneration to the extent that the funds, due on the contracts and held by the Administrator, be applied to the unpaid claims of certain of the *104 defendants, for labor performed and materials furnished in the completion of the contracts, and subrogation to the extent that it has paid the similar claims of certain creditors of Barth.
The State seeks to set-off against the amount due on the contracts the amount of Barth's indebtedness to it, through the Division of Employment Security of the Department of Labor and Industry, hereinafter called the Division, under the Unemployment Compensation Law. The United States of America makes claim against the fund under its liens for taxes due from Barth; the defendants Alfred Marciano and Moser Kueng Lumber Co. for labor performed and materials furnished in connection with the contracts; and Charles Martini and Frank Martini, judgment creditors of Barth, on a levy made on the balance due on the contracts in the possession of the Administrator. The judgment of the Martinis was entered on a claim which was unrelated to the Barth contracts with the Administrator.
The right of the plaintiff to bring this action against the State of New Jersey was affirmed by the Supreme Court in an opinion by Mr. Justice Burling reported in 8 N.J. 121 (1951).
The first contract dated October 31, 1947, provided for the rehabilitation of a dwelling house at 72 Lake Street, Jersey City, for the sum of $16,290. Article 5 (b) of the contract provides as follows:
"That within 7 days after written notice to proceed it will procure and deliver to the Administrator a surety bond as provided for by law with good and sufficient surety, satisfactory to the Administrator, guaranteeing that the Contractor shall well and faithfully do and perform the things required under this contract and in accordance with the terms thereof and an additional obligation for the payment by the Contractor and by all sub-contractors for all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for, or about the construction, erection and other work in connection with said premises. Said bond to be in the form required by 2:60-207 Revised Statutes of New Jersey, and all amendments and supplements thereto, and same to be in a sum equivalent to one hundred *105 percent (100%) of the accepted bid price hereunder. This contract will not become effective until said bond has been procured and delivered as aforesaid. In the event the Contractor fails to deliver said bond as provided herein the contract will be null and void."
The plaintiff is surety in the bond dated October 31, 1947, in the sum of $16,290 given by Barth and conditioned in accordance with the provisions of the contract. There was a final inspection of the work on October 19, 1948, and thereafter tenants went into possession of the premises. There were payments made on account to Barth and there is an admitted balance due from the Administrator of $4,496.40. The plaintiff has paid to claimants for labor performed and material furnished on this building the sum of $2,318.90; Moser Kueng Lumber Co., one of the defendants, has established a claim in the sum of $1,489.60, and Alfred Marciano, another defendant, in the sum of $817.85, making a total of $4,625.54, which total is in excess of the amount due from the Administrator. In addition to the foregoing, there remains to be considered the claim of the United States.
The second contract is dated March 12, 1948, and provides for the rehabilitation of a dwelling house at 63 Laidlaw Avenue, Jersey City, for the sum of $27,620. The contract was in the same form as the other. The plaintiff is surety on the bond of Barth dated April 9, 1948, in the amount of the contract, and which is in form identical with the one mentioned above. There was a final inspection of the premises on March 28, 1949, and shortly thereafter tenants moved into possession of the same. Certain payments were made to Barth under the contract and there is a balance due from the Administrator of $6,190.63. There was paid by the plaintiff to claimants who performed labor and furnished materials the sum of $4,740.75. There is due to Moser Kueng Lumber Co. $6,812.85, and to Alfred Marciano $1,052.47 upon like claims.
The total unpaid by the Administrator on the two contracts is $10,687.03, less a set-off of $94.40 which is conceded by all parties, leaving a total net balance of $10,592.63. In the *106 concession this set-off was not specifically related to either contract.
The claim of the Division for unemployment compensation taxes covers a period antedating the contracts in question and continuing throughout the time of their performance and after the completion thereof. The total amount claimed with interest as of December 15, 1951, is $10,530.81. The Division waives any preferential claim for that part of the tax which accrued in connection with the wages paid by Barth in the performance of the contracts in question. It takes the position that it is entitled to set-off all or none of the indebtedness of Barth against the balance due from the Administrator under the contracts.
The Martini judgment was entered against Barth in the Hudson County Court on January 10, 1950, and docketed in the Superior Court on January 19, 1950; execution was issued thereon and a levy was made on January 31, 1950, on moneys in possession of the Administrator belonging to Barth to satisfy the amount then due on the judgment, $2,894.14.
Notice of levy for federal taxes was filed with the Administrator on February 7, 1949, for $3,118.79; only a part of this liability arose out of Barth's operations in the performance of the contracts in question.
The primary question is whether the sum of $10,592.63 remaining due on the contracts between Barth and the Administrator is a trust fund for the payment for all labor performed or materials used or consumed in the carrying out of the contracts in question. It is the contention of the State and the Martinis that this balance is a trust fund only after it comes into the hands of the contractor and they cite R.S. 2:60-212 (now N.J.S. 2A:44-148) in support of this. This section reads as follows:
"All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any *107 such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of such contract shall have been fully paid."
In Stulz-Sickles Co. v. Fredburn Construction Corporation, 114 N.J. Eq. 475 (Ch. 1933), the defendant had a contract with the State Highway Commission; the work contracted for was completed but claims in excess of the amount due from the State had been filed. A receiver was appointed for the defendant and upon the order of the court the Highway Commissioner paid the balance due on the contract to him. The surety on the defendant's bond sought the fund or in the alternative that it be paid into court on the ground that it was entitled to subrogation and exoneration. It was held that the surety was not entitled to subrogation because it had paid nothing on the claims guaranteed by it, but that it was entitled to exoneration, that is, the right to have the fund applied to the guaranteed claims, and in this connection the court said, at page 477:
"The right of exoneration is merely a right to have the fund applied to the payment of the guaranteed claims. Greenberg v. Leff, 104 N.J. Eq. 502; Glades County, Florida v. Detroit Fidelity and Surety Co., 57 Fed. Rep. (2d) 449. Admittedly the surety is entitled to exoneration and the fund is clearly charged with an equity in favor of the surety to the extent that it be applied to the payment of the laborers, materialmen and subcontractors. Greenberg v. Leff, supra; Glades County, Florida v. Detroit Fidelity and Surety Co., supra; Walker v. Brown, 165 U.S. 654; 41 L.Ed. 865. This right exists irrespective of statute. In re Scofield Co., 215 Fed. Rep. 45. But it does not entitle the surety to custody or control of the fund. Exoneration `should only be awarded with due regard to the interest of the creditor; the creditor should not be subjected to the danger of loss or even unreasonable delay in collecting his debt, * * * the special circumstances of the case may control the relief.' Greenberg v. Leff, supra. In case of exoneration the surety `proceeds before payment (by the surety) quia timet and seeks to have payment made to the creditor.' Glades County, Florida v. Detroit Fidelity and Surety Co., supra. The petitioner's right to have the fund applied to the payment of the guaranteed claims (exoneration) will be effectively accomplished by the receiver under the supervision of this court."
*108 And at page 479:
"But irrespective of statute, it has already been held by this court, in at least two unreported cases that such a fund in the hands of a municipality, representing the balance of the contract price of a public improvement, where the contractor was in default, constituted a trust fund for the benefit of all parties having claims against it. Windsor v. A.C. Windsor, Inc., docket 84, page 89; Mayor, &c., of Spring Lake v. Century Wood Preserving Co., docket 92, page 437. That doctrine did not apply in the Grover Case because no fund in the hands of the municipality was involved. It was the money already paid to the contractor and its application which was in controversy."
In the determination of this question the contract, the bond and the statute must be read together. It is my conclusion that the money due on the contracts is a fund for the benefit of those whose work, material and equipment have made it payable. Such a balance is always a trust fund and the statute above mentioned merely continues it as such after the State or other governmental body or agency has paid it to the contractor. Cf. Leonard D. Sylvester, Inc., v. Giovannone, &c., Co., 116 N.J. Eq. 515 (Ch. 1934); Fidelity & Deposit Co. v. McClintic Marshall Corp., 115 N.J. Eq. 470 (Ch. 1934), affirmed 117 N.J. Eq. 440 (E. & A. 1935).
It would be highly inequitable to increase the surety's liability to subcontractors and materialmen by permitting the State to set-off against the contract price a preexisting obligation of the principal. The contracts do not authorize any such set-off. The surety in its bond did not guaranty to the State or any of its agencies payment of any preexisting obligation of the contractor.
The Division filed certificates of debt under the Unemployment Compensation Act with the clerk of this court and these under R.S. 43:21-14(e), N.J.S.A., have the force and effect of judgments. In Third Avenue B. & L. Association v. Prothero, 124 N.J. Eq. 193 (Ch. 1938), it was held that the lien of this tax was not prior to a mortgage which antedated the act. In its opinion the court said, at page 195:
*109 "It is the settled law of this State that the legislature has the power to declare by statute enacted after the execution of a mortgage that a tax levied on the mortgaged land shall be a lien prior to the mortgage; but it has been unanimously held that such priority will not be afforded to the lien of the tax unless, from the language of the statute itself, it is clearly evident that the legislature so intended. Dows v. Drew, 27 N.J. Eq. 442; reversed, 28 N.J. Eq. 459, but the principal of law stated was affirmed in the following language (at page 464):
"The mere declaration by the lawmaker that taxes shall be a lien upon the land assessed, does not of itself manifest a purpose to affect every estate which may be held in such lands, because lands are divisible into many estates, either of which may be sold without impairing the other. The legislative will to that end must be clearly manifested to give such a law any operation beyond the estate of him upon whom the assessment is cast.'"
The lien of the Division's judgment is subject to the equities of the subcontractors, materialmen and laborers in the trust fund in question.
The situation presented by the claim of the United States was dealt with by the Court of Appeals of New York in U.S. Fidelity & Guaranty Co. v. Triborough Bridge Authority (United States, Intervener), 297 N.Y. 31, 74 N.E.2d 226 (Ct. App. 1947); reargument denied 297 N.Y. 694, 77 N.E.2d 9. There it was held that where the surety on a contractor's performance bond given to the Bridge Authority was required to fulfill its obligation under the bond on the contractor's default, the surety's right to the funds in the hands of the authority, to the extent of the amount surety was compelled to pay under the bond, was superior to the contractor's right to such fund and superior to the right of the United States, to which the contractor owed income taxes, since the rights of the United States to the funds could be no greater than those of the contractor. The application of that rule disposes of the principal part of the claim of the United States. However, it made an alternative claim in the event that this view were taken. It seeks to recover that part of the wages of Barth's workmen which was withheld by him for income tax pursuant to 26 *110 U.S.C.A., Sec. 1622, and not paid to the Collector of Internal Revenue. Section 1623 of the same title provides:
"The employer shall be liable for the payment of the tax required to be deducted and withheld under this subchapter, and shall not be liable to any person for the amount of any such payment."
Proofs were offered that during the fourth quarter of 1947 at the time Barth was performing work at 72 Lake Street and on other jobs elsewhere, he withheld a total sum of $1,161.06 from his workmen for income taxes. Later there was a payment by him of $300 which the United States concedes should be credited against this sum. During the said quarterly period Barth's total payroll was $5,226.24, and of this $3,666.24 was in connection with the Lake Street job. Apportioning the sum of net retained wages of $861.06 between these two categories, we find that $604.04 of the amount withheld is applicable to the Lake Street job. This latter sum represents wages withheld from workmen on the Lake Street job and which should be paid out of the fund retained by the State, or if this is inadequate it should be paid by the surety just as it would be required to pay the unpaid wages of workmen.
The levy on the judgment of the Martinis cannot fasten on the funds in question until the claims of all persons for labor performed or materials furnished have been fully satisfied. Their right to be paid from the fund can be no greater than that of Barth. In as much as the fund is insufficient to pay in full the claims of those who performed labor and furnished materials and that of plaintiff as subrogee, there can be no recovery by the Martinis.

 Summary:
 Lake Street Contract
Due plaintiff as subrogee ..................... $2,318.09
Due Moser Kueng Lumber Co. .................... 1,489.60
Due Marciano .................................. 817.85
Due United States of America .................. 604.04
 _________
 Total ................................... $5,229.58
Balance on contract in hands of Administrator ........... $4,496.40
*111 Laidlaw Avenue Contract
Due plaintiff as subrogee .................... $4,740.75
Due Moser Kueng Lumber Co. ................... 6,812.85
Due Marciano ................................. 1,052.47
 _________
 Total .................................. $12,606.07
Balance on contract in hands of Administrator ........... $6,190.63
 _________
Total amount in hands of Administrator on both contracts $10,687.03
Less off-set without specification of particular contract $94.40
 _________
 Net balance .................................... $10,592.63

The State shall pay to the clerk of this court the sum of $10,592.63 which is the net amount remaining due on the contracts. The plaintiff shall pay into court such additional sum as will permit the payment of the following claims: Moser Kueng Lumber Co. $8,302.45; Alfred Marciano $1,870.32; and United States of America $604.04.