UNITED STATES *v.* COLOTTA, et al.

No. 39593 April 18, 1955 79 So. 2d 474

March 19, 1956 86 So. 2d 19

*H. Brian Holland,* U. S. Asst. Atty. Gen., *Ellis N. Slack, A. F. Prescott,* and *Fred E. Youngman,* Special Asst. to Atty. Gen., Washington, D. C.; *Thomas R. Ethridge,* U. S. Atty., Oxford, for appellant.

*Stanny Sanders, Cooper & Harper, Neill, Clark & Townsend,* Indianola, for appellees.

HOLMES, J.

The question presented on this appeal is whether a tax lien of the United States for delinquent income taxes is prior in right to a mechanic's lien asserted under Sections 356, et seq., of the Mississippi Code of 1942, where the Federal tax lien attached subsequent to the effective date of the mechanic's lien.

The action was originally instituted on or about March 26, 1953 by the appellee, Frank M. Rinehart, against I. J. Colotta and others to recover a judgment against Colotta in the sum of $4,144.02, alleged to have been the balance owing on a construction contract, and asserting a lien for labor and materials, commonly called a mechanic's lien, against certain particularly described real property, and wherein the other appellees, L. E. Chambless and F. R. Long, appeared asserting a like lien for $825.86, as the amount due them by contract for the installation of a heating system in connection with the same construction contract.

In May and June, 1952 the appellees entered into written contracts with I. J. Colotta whereby they obligated themselves to furnish all labor and materials for the construction of a building and the installation of a heating system therein on certain particularly described lots owned by the said Colotta in Indianola, Mississippi. The contracts were performed and the work completed on November 3, 1952, at which time there was due and owing to the appellee, Frank M. Rinehart, on his contract a balance of $4,144.02, and due and owing to the appellees, L. A. Chambless and F. R. Long, on their contract the sum of $825.86. On May 7, 1952, Colotta executed a deed of trust covering the property here involved to W. A. Hull and J. A. Hull, securing the sum of $15,000 and advances, all to be used in paying for labor and materials in the construction of the building in question.

On December 5, 1952, an assessment list was received by the Director of Internal Revenue covering Federal income taxes, penalties and interest assessed against the said Colotta and his wife for the years 1946 to 1949, both inclusive, in the amount of $46,729.23. On December 8, 1952, the Director of Internal Revenue filed in the office of the Chancery Clerk of Sunflower County, wherein was situated the property in question, notice of said claimed Federal Tax Lien.

Upon a hearing of the cause, the chancellor entered a decree granting priority of payment of the indebtedness secured by the aforesaid deed of trust to W. A. Hull and J. A. Hull, and adjudging the appellees to have priority of payment under their asserted mechanic's liens second to the mortgage lien of the said W. A. Hull and J. A. Hull, but prior and superior to the Federal tax lien of the United States. The priority accorded by the chancellor to the aforesaid deed of trust is not questioned. The United States prosecutes this appeal, contending that the chancellor erred in awarding priority to the mechanic's liens over the Federal tax lien.

The Federal tax lien is asserted under Sections 3670, 3671 and 3672, 26 U. S. C., 1952 ed. The mechanic's liens are asserted under Sections 356, et seq. of the Mississippi Code of 1942. By said section 3670, it is provided that if any person liable to pay any tax neglects or refuses to pay said tax, the amount (including any interest, penalties, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property or rights to property, whether real or personal, belonging to such person.

By said Section 3671, it is provided that unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector.

By said Section 3672, it is provided that the Federal tax lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor unless notice

thereof has been filed by the collector (designating the office wherein it may be filed).

Section 356 of the Mississippi Code of 1942 provides that every house, building, structure, etc., erected, altered or repaired shall be liable for the debt contracted and owing, for labor done and materials furnished, and that such debt shall be a lien thereon from the time of making the contract.

Section 360 of the Code of 1942 provides that any person entitled to and desiring the benefit of the lien shall commence his suit in the circuit court within twelve months next after the time when the money became due and payable.

There is no dispute as to the amount for which the mechanic's liens are claimed, or as to the identity of the lienors, or as to the certainty and definiteness of the property on which the mechanic's liens are asserted. The sole question is whether under the facts related the Federal tax lien is to be accorded priority over the mechanic's liens. The appellants assert such priority under the authority of the Supreme Court's decisions in United States v. Security Trust and Savings Bank, 340 U. S. 47; United States v. Gilbert Associates, 345 U. S. 361; United States v. New Britain, 340 U. S. 81; United States v. Acri, decided January 10, 1955 (23 U. S. Law Week 4055); United States v. Liverpool and London and Globe Insurance Co., decided January 10, 1955 (23 U. S. Law Week 4056); and United States v. Scovil, decided January 10, 1955 (23 U. S. Law Week 4050).

The appellant contends that the Federal tax lien is valid as against all other liens with the exception that it is not valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector in the designated office. It is further the contention of the appellant that under the Mississippi statutes a mechanic's lien is inchoate and imperfect until reduced to a judgment in accordance with the pre-

scribed statutory proceeding for the enforcement of such lien.

The cases relied upon by the appellant are in the main cases involving the question of priority between attachment liens and a Federal tax lien, and cases wherein the insolvency of the debtor was shown, with the exception, however, of the case of United States v. New Britain, supra, which involved a question of priority between the Federal tax lien and a city's specific and perfected statutory lien for real estate taxes and water rents.

The cases relied upon by the appellant and involving the question of priority between attachment liens and a Federal tax lien, and involving debtors shown to be insolvent, are, in our opinion, not applicable to the question presented on this appeal.

The common law rule as to priority is that the first in order of time stands first in order of rank. 33 Am. Jur. 436. In the early case of Rankin v. Scott, (U. S.) 12 Wheat. 177, the Supreme Court of the United States, speaking through Chief Justice Marshall, said: "The principle is believed to be universal that a prior lien gives a prior right, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective or be displaced by some act of the party holding it, which postpone him in a court of law or equity to a subsequent claimant."

It is the contention of the appellant, however, that the mechanic's lien granted by the Mississippi statute, until perfected by judgment, is contingent or inchoate and that it amounts to no more than a lis pendens notice that the right to perfect a lien exists. To this we do not agree. The contention of the appellant is based upon the provision of the statute requiring that any person entitled to and desiring the benefit of the lien shall commence his suit in the circuit court within twelve months next after the time when the money became due and payable. This provision of the State statute merely provides a limitation upon the pe-

riod within which suit may be begun to enforce the lien. In other words, the statute preserves the lien in effect for a period of twelve months but not longer. The existence of the lien during this twelve months period is not disturbed. At the time of the decision of the case of J. A. Dinkins v. E. J. Bowers, 47 Miss. 219, the State's statute provided a period of limitation of six months instead of twelve months. In the Dinkins case, the Court said: "The statute preserves the lien for six months after the mechanic's debt becomes due and gives that time for suit to enforce it."

██ Thus the lien is preserved under the statute but a period of limitation is prescribed within which to enforce it. Just as in the case of a valid deed of trust securing a promissory note, a period of limitation is prescribed after the expiration of which no action can be brought to enforce the deed of trust. Nevertheless, the lien of the deed of trust actually exists during the period of limitation although a proceeding to enforce the same will be barred after the expiration of the prescribed period of six years from the maturity of the debt. We hold, therefore, that the mechanic's lien in question is, under the State statute, not an inchoate lien. It is a definite, fixed lien and in the case before us, the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Hence the case resolves itself into the narrow question whether the Federal tax lien here involved should be given priority over the mechanic's liens here involved. We have concluded that this question must be answered in the negative. There is no showing here of the insolvency of the debtors, and, therefore, Section 3466 of the U. S. Revised Statutes giving priority to payment of an indebtedness owing to the United States by an insolvent debtor is not applicable.

We have found no decision of the Supreme Court of the United States, and none have been cited by counsel, involving the exact question as to the priority between a

mechanic's lien such as is here involved and a Federal tax lien such as is here involved. However, we are of the opinion that the pronouncements in the case of United States v. New Britain, 347 U. S. 81, 98 L. Ed. 520, support the conclusion which we have reached. In the New Britain case, there was involved the question of priority as between Federal tax liens and a city's specific and perfected statutory liens for real estate taxes and water rents. The liens for real estate taxes arose on various dates in 1947 through 1951. The water rent liens arose upon failure to pay and they date from December 1, 1947 to June 1, 1951. The Federal tax lien arose at the time the assessment lists were received in the office of the collector of internal revenue on various dates between April 26, 1948 and September 21, 1950. The State Court of Connecticut held that the city's liens were specific and perfected and should take priority over the Federal tax liens. The Supreme Court of the United States held that such characterization of a lien by the State is not of itself conclusive against the Federal Government. However, the Court said that it accepted the holding as to the specificity of the city's liens since they attached to specific pieces of real property for the taxes assessed and the water rent due. The Court continued: "The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien, when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." Further, the Court said: "Where the debtor is not insolvent, Congress has failed to expressly provide for Federal priority with certain exceptions not relevant here, although the United States is free to pursue the whole of the debtor's property wherever situated." Continuing, the Court said: "It does not follow, however, that the city's liens must receive priority as a whole. We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right' . . . Thus the priority of each statutory lien contested

here must depend on the time it attached to the property in question and became choate."

Accordingly, the Court in the New Britain case concluded as follows: "Under the circumstances, we vacate the judgment of the Supreme Court of Errors of Connecticut and remand the case to that Court to have determined the order of priority of the various liens asserted in accordance with this opinion."

It is to be noted, therefore, that in the New Britain case, the Court was dealing with specific statutory liens established as to the identity of the lienor, the property subject to the lien, and the amount of the lien, and the Court held on the question of priority as between such statutory liens and the Federal tax lien, that priority in time gives priority in right, and accordingly the Court remanded the case for determination by the trial court of the order of priority according to the dates on which the respective liens became effective.

In the case at bar, there is no showing that the debtors were insolvent. The identity of the lienor, the property subject to the lien, and the amount of the lien are established. The mechanic's lien, under the Mississippi statute, was a specific lien which attached to specific property. It was not contingent upon establishment by legal proceedings. It was a choate and perfected lien and was preserved in force for a period of twelve months from the due date of the debt. The proof, without dispute, shows that the mechanic's lien attached prior to the date the Federal tax lien attached. We are, therefore, of the opinion that the trial court was correct in according priority to the mechanic's lien here involved over the Federal tax lien here involved, and that the decree of the court below should be, and it is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.

ON MOTION FOR JUDGMENT TO REMAND CAUSE ON
MANDATE OF SUPREME COURT OF THE UNITED STATES

McGᴇʜᴇᴇ, C. J.

 █ On April 18, 1955, we entered a judgment affirming the final decree of the Chancery Court of Sunflower County in the above styled cause, for the reasons stated in the opinion reported in 79. So. 2d 474. There was involved the question of the priority of certain mechanics' liens under Section 356, et seq., Miss. Code of 1942. We held that the mechanics' liens had priority over the Federal tax lien arising from a back assessment of income taxes, since our statute itself created the lien and it was prior both in time and in right over the back assessment for income taxes due the Federal Government.

The United States of America filed its petition for a writ of certiorari in the Supreme Court of the United States. That Court reversed our decision without an opinion, that is to say without assigning any reason therefor. The question presented by the petition for certiorari was: Whether a lien of the United States for unpaid federal taxes, arising under Sections 3670 and 3671 of the Internal Revenue Code of 1939, is superior to a statutory mechanic's lien accorded by state law to contractors, laborers and materialmen, where the contract giving rise to the mechanic's lien had been performed but no steps had been taken to file or enforce such lien before the federal lien arose and was recorded.

Our interpretation of our own state statute, as to when a mechanic's or materialmen's lien arises, appears to have been given no weight by the Supreme Court of the United States, nevertheless we have no alternative than to sustain the motion to reverse and remand the decree of the Chancery Court of Sunflower County, Mississippi.

The motion to reverse and remand the cause on the mandate of the Supreme Court of the United States is accordingly sustained.

All justices concur except *Lee, Hall* and *Holmes, JJ.,* who dissent.

LEE, J., dissenting.

This cause recurs here on a motion to remand.

In the original decision of the case, three liens were involved: (1) A deed of trust, dated May 7, 1952, to W. A. Hall and another for $15,000 to pay for labor and materials; (2) liens of Frank M. Rinehart in the sum of $4,144.02 under a written contract, dated May 3, 1952, for labor and materials for the construction of a building, and L. A. Chambless and F. R. Long under a written contract, dated June 4, 1952, in the sum of $825.86 for mechanical work in installing a heating system in the building; and (3) a lien of the United States in the sum of $46,729.23 for unpaid income taxes and penalties, filed in the office of the chancery clerk on December 8, 1952.

The construction work of Rinehart, Chambless and Long was completed on November 3, 1952, at which time the above balances on their contracts became due and payable. Thereafter, on March 26, 1953, they filed their suit to recover and to have the property sold under their liens.

The chancery court, after a hearing, entered a decree which ordered the sale of the property and the payment of the liens in the order in which they are listed above. On appeal, this Court affirmed the decree of the trial court. 79 So. 2d 474. The opinion dealt fully with the provisions of Section 356, Code of 1942, which created a lien on the building and curtilage thereof to secure the payment of labor done and materials furnished in its construction, and to Section 360, Code of 1942, which provided the method of enforcement. This lien is not new in this State. After admission into the Union on December 10, 1817, the State Legislature thereafter on February 5, 1819, passed the first law on this subject; and by February 22, 1940, the statutes had been so co-

ordinated that they were substantially the same as the present laws. These statutes have been in effect through the intervening years. See Articles 4, 5, 6 and 7, Chapter 45, Hutchinson's Code 1798 to 1848; Articles 1-14, Chapter 39, Code of 1857; Articles 1 and 11, Sections 1603 et seq., Code of 1871; Chapter 53, Sections 1378 et seq., Code of 1880; Sections 2698 et seq., Code of 1892; Sections 3058 et seq., Code of 1906; Sections 2258 et seq., Code of 1930; Sections 356 et seq., Code of 1942. In the earlier days, the period within which the suit had to be brought was six months; and as was pointed out in the original opinion, this Court in Dinkins v. Bowers, 49 Miss. 219, in 1873 held that: "The statute preserves the lien for six months after the mechanic's debt becomes due and gives that time for suit to enforce it." Over fifty years ago, the time was increased from six to twelve months. Hence it may now be said that the statute preserves the lien for twelve months after the mechanic's and materialman's debt becomes due and gives that time for suit to enforce.

Thus, for more than a century, the State of Mississippi, by its statutes, has given assurance to those who perform and furnish materials in the construction of a building that they have a lien on the building and curtilage thereof to enforce payment for their labor and materials. The owner of a building, from such statutes, likewise knows that, if he fails to pay for the labor and materials necessary to construct his building, such building can be sold to enforce payment.

The building in question was not completed until November 3, 1952. The debt, which was owing the lienees on account of labor and materials, did not become due until the building had been completed; and of course, they could not begin their suit until after that time. But, if the period of twelve months in which to enforce the lien is to be brushed aside, and if the United States, in the interim between the completion of the building and the acquisition of a judgment by the lienees, can obtain

48

priority on its lien, then, even though suit had been filed on November 4, 1952, the day after completion of the building, such suit would have been without avail, because it would have been impossible, under our trial procedure and schedule of court terms, to have obtained judgments and had them enrolled prior to December 8, 1952, the date on which the Director of Internal Revenue filed the lien of the United States for income taxes in the Office of the Chancery Clerk of Sunflower County.

If such a course is open to the United States in collecting debts from its citizens, then it is privileged to reach in ahead of breadwinners and materialmen, take from them their wages and competence with which they feed and clothe themselves and families, and leave them and their dependents in poverty, destitution and want, notwithstanding such breadwinners and materialmen, by their labor and with their materials, created and constructed the building, and without which labor and materials the building would not exist.

United States v. City of New Britain, Conn., 347 U. S. 81, 74 S. Ct. 367, 98 L. Ed. 520, was cited in the original opinion, and adherence to that principle would preclude the occurrence of the possible disaster in this case.

The common-law doctrine of first in order of time stands first in order of rank, approved by the Supreme Court of the United States in Rankin v. Scott, 12 Wheat. 177, 6 L. Ed. 592, was cited in the original opinion.

The debt of the lienees arose by virtue of written contracts. The lien was imposed by statute. "In its broadest sense and common acceptation a lien is understood and used to denote a legal claim or charge on property, either real or personal, as security for the payment of some debt or obligation, a hold or claim which one person has on the property of another as a security for some debt or charge, although the property is not in the possession of the one to whom the debt or obligation is due. It includes every case in which personal or real property is charged with the payment of a debt. Its meaning is

more extensive than the jus retentionis (derecho de retencion) of the civil law.'' 53 C. J. S., Liens, Section 1 a., p. 826. See p. 828 thereof as follows: ''* * * in a technical sense the term 'lien' is more comprehensive than the term 'mortgage' * * * The term 'lien' is somewhat analogous to the term 'pledge,' and, in the sense that a lien includes every case in which personal or real property is charged with the payment of a debt, a pledge is a lien. In a technical sense, however, the term 'lien' is more comprehensive than the term 'pledge,' and has a different legal signification, and, when they are used in the same connection in a statute or instrument, they serve to explain each other's meaning.'' See also d., p. 832, as follows: ''By the civil law, a lien or 'privilege' is a right to detain a thing until a demand is satisfied; a right which entitles a creditor to be preferred before other creditors. Various terms, such as 'gravamen,' 'carga,' 'hypoteca,' or 'privilagium,' are employed in the civil law to designate different forms of liens or preferences.'' See also same volume, Section 13, p. 859, as follows: ''As a general rule a valid lien created on real or personal property is enforceable against the property in the hands of any person who subsequently acquires it, except a bona fide purchaser for value without notice of the lien.''

By Section 3670, 26 U. S. C., 1952 Ed., the amount of unpaid taxes becomes a lien in favor of the United States upon all property or rights to property, whether real or personal, belonging to the debtor; but, in Section 3672 thereof, the lien is not valid as to prior mortgagees, pledgees, purchasers, or judgment-creditors. But, if the lien for labor and materials is more comprehensive than that of a mortgagee or pledgee, I am unable to see how it becomes secondary to the federal lien for taxes, filed after the completion of the building, but before the judgment for the labor and material could be obtained.

If the United States has priority in this kind of a case, then contemplate what may also happen to landlords in

this State. By Section 908, Code of 1942, a landlord has a lien on the agricultural products of the leased premises paramount to all other liens, claims or demands, to secure the payment of rent and money and supplies advanced for the purpose of producing the crop. But, if the United States, before the crops are harvested and the rent money and supplies are paid, enrolls its lien for unpaid income taxes against a tenant, then by the same token, it may reach in and require that the agricultural products, which, under our law, guarantee payment of the landlord's rent and advances, be condemned and sold for the satisfaction of its tax lien, thereby depriving the landlord of rent for the use of his land and of payment for money and supplies to make the crops, in spite of the fact that no crops could have been produced at all without his land and the advance of money and supplies.

The Supreme Court of the United States granted a petition for a writ of certiorari to review the judgment of this Court, and, by its mandate of October 10, 1955, in its Cause No. 271, reversed the judgment of this Court, and remanded the cause to us. No opinion was written. By that judgment, it of course said that this court had committed error; but it did not point out wherein this Court had erred. Our decision was based on sound authority and on the laws of this State which have been in effect and unquestioned for more than a century.

To me it is inconceivable that the Supreme Court of the United States has held that our statutes are a nullity, or that it has construed the Federal statutes so as to deprive breadwinners and materialmen of their wages and competence, as pointed out above, and so unjustly victimize them. The reversal was not limited in scope. The briefs on certiorari was not before us. With reason it may be said that the cause will have to be tried again in its entirety. There is no opinion. We do not know why the case has been reversed.

If this Court reverses the case, it must, in writing, state its reason therefor. See Section 1963, Code of

1942, as follows: ''In all cases settling important principles, in cases to be remanded, and in all cases where the judgment or decree of the court below is reversed, and in all felonies where the punishment prescribed is ten years or more, the opinion of the Supreme Court shall be in writing stating the reasons upon which the decision is made; and the opinion shall be recorded by the Clerk in a well-bound book to be kept for that purpose.''

If we remand the case to the trial court, we cannot state the reason of the Supreme Court of the United States for the reversal. Any reason of our own, in justification of the decision of the Supreme Court of the United States, would be hazarded out of pure speculation and conjecture. I think it would be a mistake, as we grope around in the maze of darkness as to what that Court has decided, to try to point out to the trial court what has been decided, or give it directions as to what it should do. Personally, since I do not know what to do, I would withhold action pending further enlightenment.

*Hall* and *Holmes, JJ.*, join in this dissent.