**CENTRAL SURETY AND INSURANCE CORPORATION, Plaintiff,**

v.

**MARTIN INFANTE CO., Inc., et al., Defendants.**

**Civ. A. 407-57.**

United States District Court
D. New Jersey.

July 8, 1958.

McCarter & English, Newark, N. J., by Ward J. Herbert, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for the Government.

W. Ludlow James, Montclair, N. J., for claimant Liberty Mut. Ins. Co.

WORTENDYKE, District Judge.

The present action was instituted by plaintiff in the Chancery Division of the Superior Court of New Jersey. After the United States (Government) was made a defendant as tax claimant, it thereupon removed the action to this Court, in accordance with the provisions of 28 U.S.C. § 1444. The only remaining parties who allege interests in the fund which is the subject of this action are the plaintiff, the United States as tax claimant, and Liberty Mutual Insurance Company in connection with claims for unpaid but earned premiums on certain policies issued to the initial primary defendant.

Plaintiff (Surety) became surety upon a performance and payment bond required by N.J.R.S. 2A:44–143, N.J.S.A., and by the terms of a written contract between Martin Infante Co., Inc. (Infante), as general contractor, and the Board of Education of the Township of Millburn (Board), for the construction of a senior public high school in the Township of Millburn, New Jersey. Both contract and bond were dated August 17, 1954, and the contract was incorporated by reference in the bond.

Infante commenced performance of and received payments under the contract, but was unable to complete his undertaking with his own resources. He suffered the accrual of unpaid claims of subcontractors and materialmen, and assigned his rights under the contract to Surety. Surety paid all the claims of subcontractors and materialmen, took assignments of their respective liens, and completed the contract with the facilities of Infante, but at the cost of Surety's own advances and payments received by it from the Board.

On February 15, 1956 the District Director of Internal Revenue assessed and made demand for payment of Federal taxes due from Infante, and subsequently served upon the Board a notice of levy upon any moneys in its hands due to Infante. The Director claimed a lien upon the subject matter of the levy pursuant to the provisions of 26 U.S.C.A. § 6321. As of the stated date, Infante was entitled to receive no money from the Board under the terms of the contract, because Infante then owed subcontractors and materialmen, for work performed and materials furnished upon and to the job, amounts aggregating a sum in excess of the moneys which the Board had retained under certificates of work completed previously submitted by the architect and engineer. At the time of the claimed accrual of the tax lien Infante owed upon claims of subcontractors and materialmen a sum in excess of $211,000 against which the Board had previously withheld from payments made

under the contract the sum of $118,316.-91.

In accordance with the provisions of N.J.R.S. 2A:44–141, N.J.S.A., and of this Court's order dated August 27, 1957, the Board (on October 28, 1957) paid into Court the sum of $185,572.58, constituting the balance of the moneys payable by the Board under the contract. This fund was subsequently reduced by the payment to Surety of $86,455.39 pursuant to consent order of this Court dated November 7, 1957.

Among the contentions advanced by Surety as a basis for its recovery of the funds remaining in the registry of this Court is that relating to its status as subrogee of the Board. National Surety Corp. v. Barth, Ch.Div.1952, 20 N.J.Super. 100, 109, 89 A.2d 104, affirmed 1953, 11 N.J. 506, 95 A.2d 145; Board of Education of City of Linden v. Vail, Ch.1931, 108 N.J.Eq. 207, 154 A. 531, affirmed per curiam E. & A. 1933, 113 N.J.Eq. 113, 166 A. 154; Camden County Welfare Board v. Federal Deposit Ins. Co., Ch.Div.1948, 1 N.J.Super. 532, 62 A.2d 416; United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226, reargument denied 297 N.Y. 694, 77 N.E.2d 9. Having satisfied all other claimants (except Liberty Mutual Insurance Company, of which more hereafter), Surety now claims to be entitled to this entire balance, free of all claims of the United States, for taxes, interest and penalties, against Infante. The claim of Liberty Mutual Insurance Company is for unpaid earned premiums on workmens' compensation, public liability and group liability insurance policies issued to Infante in connection with various jobs on which Infante was engaged, and rests upon an assignment, dated August 7, 1956, by Infante to Liberty Mutual, of moneys then due or to become due on all such jobs. However, by stipulation, Liberty Mutual has conceded that its said claim is subject to the payment of all necessary expenses for the completion of said jobs and valid

debts incurred therefor, to the date of the assignment, including claims of Surety for advancements to effect such completion. In view of the Court's determination set forth herein of the rights in the present fund, we are not here concerned with the claim of Liberty Mutual.

By the terms and conditions of its contract with the Board, Infante became entitled to receive payments thereunder only if (a) there were no outstanding claims against Infante filed with the Board, and (b) receipted bills or other satisfactory evidence had been submitted to the Board that all obligations incurred by Infante and its subcontractors in carrying out the project had been satisfied.[1] Concerning the sums available for payment of the competing claims of Surety and of the United States, I find that Surety received, after the default of Infante, the sum of $402,217.33 (which takes into account the $86,455.69 withdrawn from the registry of this Court pursuant to the aforesaid consent order) but expended, in fulfillment of its obligations under the bond covering the Millburn contract, the sum of $548,061.69. This leaves the Surety with an out-of-pocket loss of $145,844.36 unless it is permitted to reach the $99,117.19 remaining in the registry of this Court since the aforesaid withdrawal.

The situation in which Infante found itself when it admitted default[2] and called upon Surety to take over is strikingly similar to that which confronted the contractors in Fidelity & Deposit Co. v. New York City Housing Authority, 2 Cir., 1957, 241 F.2d 142; United States Fidelity & Guaranty Co. v. Miller, D.C.W.D.N.C.1956, 143 F.Supp. 941; and in Scott v. Zion Evangelical Lu-

---

1. The contract was made expressly subject to the following conditions:

"The Contractor shall, from time to time, as required by the Owner, furnish satisfactory evidence that all persons who have done work or furnished materials under this Contract, or have suffered damage on account of the Contractor's operations, have been fully paid or secured.

" * * * So much money due to the Contractor under and by virtue of the contract as shall be considered necessary by the Board may be retained by the Board and held until such bids, actions, claims or amounts shall have been settled and suitable evidence to that effect furnished to the Board." (G-11)

"When in the opinion of the Architect, the Project or any part thereof has been abandoned, is unnecessarily delayed, or cannot be completed by the Contractor at the rate of progress or within the time specified, or the Contractor is willfully violating any of the covenants of this Contract, or is carrying it out in bad faith, the * * * Board may then call on Surety to complete the Project or may complete it by other means, as they may elect. * * * The Board shall recover the cost of finishing the Project by deducting the amount thereof from any moneys due or which may become due the Contractor under this Contract, and when such moneys are insufficient to pay said cost, the amount of said cost in excess of such moneys shall be paid by the Contractor or his Surety." (G-15)

" * * * payments on account will be made not exceeding 90% of the value of such work * * * provided that if claims have been filed with the Board against the Contractor, sufficient money may be withheld to satisfy such claims until they have been satisfied.

"When the Project is completed and accepted by the Board a final certificate of cost of the Project will be made by the Architect * * * and when this final certificate is approved, the money due the Contractor for the performance of the Project as determined by said final certificate * * * will be paid the Contractor, provided, however, that before such final payment is made the following requirements shall be satisfied. (a) There shall be no outstanding claims against the Contractor filed with the Board. (b) The Contractor shall have paid all due obligations and shall have furnished, when directed by the Architect, receipted bills or other satisfactory evidence that all obligations incurred by him and by his subcontractors in carrying out the Project have been satisfied; * * *." (G-35)

2. By letter of February 23, 1956 to Board, Infante requested that all future payments due on the contract be made to Surety to be deposited in a trust account to pay present and future obligations on the contract.

theran Church, 1955, 75 S.D. 559, 70 N.W.2d 326.

In the Fidelity case the contractor was to install heating and ventilating facilities in a housing project, and when these facilities had been installed and accepted there remained an unpaid balance on the contract. This balance was claimed both by the United States for taxes and by the surety which made payments for labor and materials as required by its bond. The contract required the contractor to pay such claims before he would be entitled to final payment, and the court held, 241 F.2d at page 144:

> "* * * classification of interests is a federal question; the existence of interests to be federally classified, however, is solely a question of state law."

The Court then construed the failure to pay the labor and materialmen as a material breach of the contract and concluded that the contractor had no rights thereunder, saying, at pages 146–147:

> "We do not understand how the New York courts, or any courts for that matter, could find justification for holding, in the face of so carefully drawn a contract, that a failure to satisfy these conditions is 'insubstantial' * * *
>
> "* * * This terminology indicates that while the ultimate aim of the Authority may have been to secure prompt payment for laborers and materialmen, it requires contractually as a condition precedent to payment that the contractor do so.
>
> "We are satisfied * * * that * * * the taxpayer-contractor had no right to the withheld fund. Of necessity, it follows that it had no 'right to property' to which a federal tax lien might attach, * * *"

In the Miller case, Judge Warlick, construing 26 U.S.C. § 6321,[3] points out 143 F.Supp at page 944, that "Under that section nothing could be plainer than that a lien for federal taxes extend (sic) only to property and rights to property, real or personal, which belongs to the tax payer." The question presented was whether Miller, who had completed his contract except for several minor items, but was in default in the full performance of his contract for the construction of a Federal Housing project by reason of his indebtedness to materialmen and subcontractors, had any interest in moneys in the hands of his surety which were later deposited in the registry of the court. Upon the authority of numerous cited cases and the principle therein stated that "* * * a contractor or a sub contractor or his surety on default coming about, has no property rights in monies due under contracts for construction until and after performance is complete and all labor and materialmen have been paid in full", the court held that the Government could not find property of the tax debtor to which its lien could attach.

In the Zion Church case, many of the authorities cited by Judge Warlick in the Miller case were also cited and to a similar conclusion, which is to be found in the following language of Judge Roberts, speaking for the South Dakota Supreme Court [75 S.D. 559, 70 N.W. 2d 328]:

> "The question in the instant case is not one of priority and perfection of liens. The decisive question is what amount under the contract was due to * * * (the defaulting contractor). The contractor had no property right in so much of the fund in the hands of the church as was necessary for the payment of claims of materialmen and the government cannot claim more than the

3. § 6321. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States *upon all property, * * * whether real or personal belonging to such person."* (Emphasis supplied.)

tax debtor \* \* \* (the contractor) was entitled to."

■■ Our own Judge Maris, of the Third Circuit Court of Appeals, has disposed of similar questions in a similar manner. Karno-Smith Co. v. Maloney, 3 Cir., 1940, 112 F.2d 690; United States v. Burgo, 3 Cir., 1949, 175 F.2d 196. More recently, in United States v. Bess, 78 S.Ct. 1054, in determining whether a deceased had property rights in a life insurance policy to which a lien could attach, Mr. Justice Brennan said, for the United States Supreme Court, 78 S.Ct. 1057:

"We must now decide whether Mr. Bess possessed in his lifetime, within the meaning of § 3670 [4] any 'property' or 'rights to property' in the insurance policies to which the perfected lien \* \* \* might attach. Since § 3670 creates no property rights but merely attaches consequences, federally defined, to rights created under state law, Fidelity & Deposit Co. v. New York City Housing Authority, 2 Cir., 241 F.2d 142, 144, we must look first to Mr. Bess' right in the policies as defined by state law. \* \* \*"

See, Old Colony Insurance Company v. Lampert, D.C.N.J.1955, 129 F.Supp. 545, affirmed per curiam, 3 Cir., 227 F.2d 520. All of these cases recognize that (1) the rights of the Collector of Internal Revenue can rise no higher than those of the taxpayer in property sought to be subjected to a Federal tax lien; and (2) whether the taxpayer had any property or rights in property to which a lien could attach is a matter of State law. See also, Great American Indemnity Co. v. United States, D.C.W.D.La. 1954, 120 F.Supp. 445; New York Casualty Co. v. Zwerner, D.C.N.D.Ill.1944, 58 F.Supp. 473; and F. H. McGraw & Co. v. Sherman Plastering Co., D.C.Conn. 1943, 60 F.Supp. 504, affirmed 2 Cir., 149 F.2d 301, certiorari denied, 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452. In each of these cases the finding of no property rights in the defaulting taxpayer contractor was predicated upon his failure to pay laborers and materialmen. Such failure was treated as a total breach of the taxpayer's contract with the owner, disentitling the contractor to receive any further payments under the contract. The decision law of New Jersey recognizes that the foregoing principles are applicable here. National Surety Corp. v. Barth, supra; Damato v. Leone Construction Co., App.Div.1956, 41 N.J. Super. 366, 125 A.2d 302. In National Surety, Judge Stanton, 20 N.J.Super. at page 109, 89 A.2d at page 109, relied upon United States Fidelity & Guaranty Co. v. Triborough Bridge Authority, supra, as disposing " \* \* \* of the principal part of the claim of the United States." In the Damato case a building owner deposited moneys due under a construction contract in court and interpleaded the general contractor and the United States. The latter claimed a lien for unpaid taxes due from the contractor. The contractor had abandoned the contract before completion and had left unpaid certain claims of subcontractors. In determining that there was no property right in the contractor to the moneys deposited in court by the owner to which the Federal tax lien could attach, the Court concluded that there had been no substantial performance of the contract without which no interest in the balance of the contract price could subsist in the contractor. See, Fidelity & Deposit Co. v. New York City Housing Authority, supra, 241 F.2d at page 146.

■ Such must necessarily be the disposition of the case at bar. I conclude that on February 15, 1956, when the Deputy Director first certified his assessment against Infante, for payment of which demand was thereafter made, Infante had no property rights in moneys in the hands of the Board which had been appropriated to the contract between them. Therefore, no lien could then or thereafter attach to any such moneys, and the subsequent levies were ineffective to create or establish in the

---

4. Now 26 U.S.C. § 6321. See, fn. 3 ante.

United States any right to the funds presently on deposit in the registry of this Court.

The cases from which the Government seeks support for its assertion that property rights existed in Infante when the alleged tax liens arose do not hold as construed by the Government United States v. Security Trust and Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. White Bear Brewing Co., 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (reversing per curiam, 7 Cir., 227 F.2d 359); United States v. Kings County Iron Works, Inc., 2 Cir., 1955, 224 F.2d 232, all turned upon the issue of priority between a federal tax lien and a state-recognized (choate or inchoate) lien. *Sic etiam*, United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725 (reversing per curiam, 224 Miss. 33, 79 So.2d 474); United States v. Vorreiter, 1957, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23 (reversing per curiam, 134 Colo. 543, 307 P.2d 475); and United States v. R. F. Ball Construction Co., 1957, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (reversing per curiam, 5 Cir., 239 F.2d 384). Nor is United States v. Munsey Trust Co., 1947, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 at variance with our conclusion here. Munsey Trust held merely that percentages retained pursuant to contract by the United States may be subjected to its set-off claims despite the claims of a surety who has paid laborers and materialmen. The question here confronting us (whether the taxpayer had a property interest to which a Government tax lien could attach) was not involved in those cases. The Government's brief suggests a conflict between United States v. Kings County Iron Works, Inc., supra, and Fidelity & Deposit Co. v. New York City Housing Authority, supra. There is no conflict because in Housing Authority, as in the case at bar, the non-existence of a property right to support a tax lien precluded a recognition of any Government lien.

By virtue of the undertaking of Infante in its application to Surety for the contract bond, together with the assignments to Surety by the various subcontractors and materialmen of their lien claims and the advancements made by the Surety for the benefit of Infante, the Surety, as such, and as subrogee of the Board, has become entitled to the entire balance on deposit in the registry of this Court, without prejudice to any rights which the Surety may have against Infante by reason of Infante's default and the consequent unreimbursed losses which the Surety was thereby compelled to sustain. It is, therefore, unnecessary to discuss Surety's contentions with respect to the effect of the two Infante assignments or its status as a mortgagee or pledgee within the meaning of 26 U.S.C. § 6323(a).

This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law, and an order for judgment may be presented in accordance therewith.