John T. Robertson and Emma Robertson, Plaintiffs, v. Huntley and Blazier Company, Gauen Lumber Company, Steve Tomic, M. J. Kickham, Welco Supply Company, Dale McMackin, Trustee in Bankruptcy of Estate of Central States Lumber and Supply Company, Bankrupt, Defendants-Appellees, and United States of America, Defendant-Appellant.

Term No. 53–M–2.

Opinion filed October 7, 1953. Rehearing denied November 19, 1953. Released for publication December 1, 1953.

·H. BRIAN HOLLAND, Assistant Attorney General of the United States, ELLIS N. SLACK, FRED E. YOUNGMAN,

Special Assistants to the Attorney General; WILLIAM W. HART, United States Attorney, and ERNEST R. McHALE, Assistant United States Attorney, both of East St. Louis, for appellant.

VINCENT J. HATCH, of East St. Louis, for certain defendants-appellees, and OEHMKE & DUNHAM, of East St. Louis, for certain other defendant-appellee.

Mr. JUSTICE BARDENS delivered the opinion of the court.

The controversy in this case is between the United States of America, defendant-appellant, claiming a lien ·for unpaid internal revenue taxes, and certain defendant-appellee subcontractors, claiming priority under mechanics' lien claims. The lower court held that the liens of the subcontractors were entitled to payment prior to the internal revenue liens and entered a decree accordingly, from which the United States of America has taken this appeal.

On or about December 8, 1949, the plaintiffs in the suit, namely, John Robertson and Emma Robertson, owners of certain real estate, entered into a contract with Central States Lumber & Supply Company, hereinafter referred to as contractor, for the construction of a one story, frame dwelling on the real estate owned by them. The cost of the house was to be $6,025 of which $2,025 was to be paid when the roof was on the house and the balance, or $4,000, was to be paid on completion of the contract. Plaintiffs paid the $2,025, but before completion of the house the contractor was adjudicated a bankrupt, necessitating the expenditure by plaintiffs of $67.40 for wiring and electrical equipment to complete the house. Plaintiffs admitted owing the balance of $3,932.60 and, knowing that this sum was not sufficient to pay the subcontractors and the govern-

ment tax liens, commenced this suit and made all lien claimants parties defendant and by leave of court deposited the balance into court for disposition.

The five lien claimants who were named as defendants were all subcontractors who had entered into agreements with the bankrupt contractor to furnish labor and materials in connection with the construction of the dwelling house on the premises owned by plaintiffs. The amounts claimed, the dates on which the last work was done or last material furnished, the dates of notices served on the owners and the dates on which notices of liens were filed are as follows:

| Name | Amount | Date Amount Became Due | Notice Served on Owner | Notice Filed |
|---|---|---|---|---|
| Huntley & Blaizer Co. | $ 500.00 | May 14, 1951 | July 11, 1951 | Aug. 3, 1951 |
| Gauen Lumber Co. | 1552.25 | Aug. 30, 1951 | Sept. 7, 1951 | Oct. 22, 1951 |
| Steve Tomic | 44.00 | Aug. 10, 1951 | Oct. 3, 1951 | Oct. 29, 1951 |
| M. J. Kickham | 831.18 | Aug. 27, 1951 | Sept. 12, 1951 | Nov. 7, 1951 |
| Welco Supply Co. | 398.00 | Aug. 30, 1951 | Oct. 8, 1951 | Nov. 5, 1951 |

The Collector of Internal Revenue filed notices of tax liens against the contractor with the recorder of St. Clair county, Illinois, covering assessment of income tax for the fiscal year ended June 30, 1950, assessments of income withholding taxes and federal insurance contributions for the last three quarter-year periods of 1950 and the first quarter-year period of 1951, and assessments of Federal Unemployment Tax Act taxes for the calendar year 1950, as follows:

| Date Assessment List Received by Collector | Amount of Assessments | Date Notice of Lien Filed |
|---|---|---|
| Oct. 2, Dec. 11, and 14, 1950 | $13,562.94 | Jan. 29, 1951 |
| March 7, 1951 | 3,159.91 | March 12, 1951 |
| May 15, 1951 | 2,587.38 | May 21, 1951 |
| June 8, 1951 | 1,668.59 | June 14, 1951 |
| March 26, 1951 | 472.98 | June 25, 1951 |

As a result of subsequent collections, there remained an unpaid balance of $14,049.64 due on these assessments at the time of trial.

On August 15, 1951, the Collector of Internal Revenue issued a notice of levy, directed to John T. Robertson, one of the plaintiffs, notifying him of the amount due from the contractor to the United States and further notifying him that any sums of money owed to the contractor were thereby seized and levied upon. The contractor was adjudicated bankrupt on August 31, 1951.

The validity and amounts of the subcontractors' claims and the validity and amount of the federal tax liens are not in question, but the Government insists that under the above stated facts it is entitled to priority over the subcontractors. If its contention is sustained there would be nothing left for the subcontractors. The lower court decreed that the subcontractors should first be paid and that the balance of $378.34 be paid to the trustee in bankruptcy. The Government also insists that even if the subcontractors' liens are held to be prior and entitled to payment first, the lower court erred in decreeing the balance to the trustee in bankruptcy instead of ordering it paid to the United States.

 It is the contention of the Government that tax liens of the United States were specific and perfected, attached to all property and rights to property of the contractor on the dates when they arose and that the question of whether a lien under state law is sufficiently specific and perfected to take priority over a lien of the United States is a federal question. These contentions are not questioned by appellees. The Government next insists that the mechanics' and materialmen's liens were inchoate when the tax liens of the United States attached and that under the authority

382

of *People ex rel. Gordon v. Campbell,* 329 U. S. 362, 91 L. Ed. 348, 67 S. Ct. 340, the characterization by the state courts of a lien as inchoate is practically conclusive upon the federal courts; therefore, the lien of the United States is entitled to priority. The lien claimant-appellees vigorously contest the contention that their liens are inchoate. The Government cites a number of Illinois cases to sustain its position in this respect but, upon reading these cases, we find that the specific question has not been passed upon. It is true that several of the decisions, namely: *W. W. Brown Construction Co. v. Central Illinois Construction Co.,* 234 Ill. 397; *Decatur Bridge Co. v. Standart,* 208 Ill. App. 592; *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84, have characterized the liens under the Mechanics' Lien Act as inchoate. The Government relies strongly upon the case of *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84 and upon the language of the court at page 89, as follows;

"The present lien statute, which governs this case, provides (paragraph 35) that a sub-contractor, unless it is provided otherwise in the contract between the owner and original contractor, shall have a lien 'from the same time, on the same property as provided for the contractor, and, also, as against the creditors and assignees, and personal and legal representatives of the contractor.' The sub-contractors' liens existed by virtue of the contract between the owners and the original contractors, which contained no provision against liens, but the lien itself was created by statute. *Von-Platen v. Winterbotham,* 203 Ill. 198; *Kelly v. Johnson,* 251 id. 135.

"Some confusion has arisen as to when the lien arises and whether it exists before the statutory notice is given. That question received the consideration of this court in *Brown Construction Co. v. Central Illinois*

383

*Construction Co.* 234 Ill. 397. It was there said: 'In proper case the lien exists whether notice is given or not. The proviso in section 9 that the lien shall not attach unless notice shall have been served or filed, "simply means that the incipient or inchoate lien of the sub-contractor will cease,—not 'attach' to the property in the sense of becoming a fixed lien thereon,"—if the notice prescribed by the statute be not given. (*St. Louis and Peoria Railroad Co. v. Kerr,* 153 Ill. 182.) As is said in that case, any other construction of the statute would render it inoperative, because it would make the statutory lien subject to any other lien placed upon the property, or any conveyance thereof made, after the beginning of the work and before the notice was served or filed.' (See, also, *Boyer v. Keller,* 258 Ill. 106; *Rittenhouse & Embree Co. v. Warren Construction Co.* 264 id. 619.) The lien given by the statute exists from the date of the original contract, but notice of the claim of lien must be given within the time required by statute to preserve and enforce it. The liens of defendants in error were not defeated by the original contractors being adjudged bankrupts. 1 Loveland on Bankruptcy, 495, 496; *Paddock v. Stout,* 121 Ill. 571."

A careful reading of this language convinces us that the court recognized that the statute, which presently reads the same as quoted, provided for the lien and for the time that the lien would commence. The court also said that the lien existed by virtue of statute and that the subsequent steps necessary to be taken by the lien claimant were only necessary to "preserve" such lien and not to perfect it. We feel that any other construction of the statute would do violence to its clear intent. The lien attaches as provided by statute but the enforcement of the lien was inchoate in the sense that

certain steps were required to be taken as a condition precedent to bringing suit to enforce the lien against the property.

Regardless, however, of the question of priority and perfection of liens, a careful analysis of the facts in this case brings us to the conclusion that a correct decision must be approached from a different point of view. It should be noted that the United States does not have or claim any lien against the property of the plaintiffs, but only as to the monies which the plaintiffs are obligated to pay to the contractor bankrupt. The lien claimants, on the other hand, claim liens against the real estate of the plaintiffs. In order for the plaintiffs to be relieved of the burden of these claimed liens, it is necessary that they as owners of the real estate fully comply with the Mechanics' Lien Act. This state of facts distinguishes the case at bar from the cases of other jurisdictions cited by appellants because in those cases the Government acquired liens against the owner of the property being improved. Therefore, the decisive question in this case is what monies were due to the bankrupt contractor under his contract, for the United States cannot claim more than the contractor was entitled to.

■■ Under any contract between a landowner and a contractor for the erection or improvement of a building, the Mechanics' Lien Act becomes a part of the contract and it was so recognized in paragraph 4 of the contract in the instant case, which paragraph reads as follows:

"The party of the First Part will furnish all necessary affidavits that may be required to show that all labor and material have been paid for in full, out of which may or might arise a material or labor lien."

385

Looking to the Mechanics' Lien Act, we find that section 5, chapter 82, Ill. Revised Statutes, 1951, paragraph 5 [Jones Ill. Stats. Ann. 74.05], provides that a contractor must furnish the owner a list of the subcontractors and the amount due or to become due to the subcontractors thereunder. Section 32, chapter 82, Ill. Revised Statutes, 1951, paragraph 32 [Jones Ill. Stats. Ann. 74.32], compels the owner to withhold sums due or to become due to the subcontractor after he has notice as provided by section 5, or as provided by section 24, chapter 82, Ill. Revised Statutes, 1951, paragraph 24 [Jones Ill. Stats. Ann. 74.24]. The record fails to show that any statement was furnished the owner by the contractor under section 5 and it has been held that payments without complying with this section are made by owners at their peril. *Liese v. Hentze,* 326 Ill. 633, 158 N. E. 428; *Gottschalk Const. Co. v. Carlson,* 253 Ill. App. 520.

 Section 27, chapter 82, Ill. Revised Statutes, 1951, paragraph 27 [Jones Ill. Stats. Ann. 74.27], provides for retention of monies due subcontractors and provides for priorities of payment. Under this section the contractor is entitled to nothing unless and until all claims for wages and claims of subcontractors are paid in full. Inasmuch as the owners did not receive any statement from the contractor under section 5, and inasmuch as all of the lien claimants fully complied with the Act in serving notices on the owners prior to the payment of the funds by them, the contractor became entitled to none of these funds except the excess over and above what the owners were required to withhold for the payment of the subcontractors. This sum was found to be $378.34. Since that is all that the contractor could have been entitled to, the lien of the Government can rise no higher. See *United States v.*

*Kaufman,* 267 U. S. 408, 69 L. Ed. 685, 45 S. Ct. 322. For these reasons the lower court was correct in holding that these subcontractors were entitled to be paid out of the funds provided by the owners prior to the turning over of any funds to apply on the lien of the United States.

 The Government lien was perfected prior to the adjudication of bankruptcy and there is no necessity for a sale of property. There is no occasion therefore in this case to pay the balance of these funds to the trustee in bankruptcy. They are properly payable to the United States. See *Goggin v. Division of Labor Law Enforcement of California,* 336 U. S. 118, 93 L. Ed. 543, 69 S. Ct. 469. The decree of the lower court is affirmed in all respects except that part directing the payment of the $378.34 to the trustee in bankruptcy and in that respect the decree is modified to provide the payment of this sum directly to the United States. As modified, said decree is affirmed.

*Decree modified and affirmed as modified.*

SCHEINEMAN, P. J., CULBERTSON, J., concur.