The **UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**WHITE BEAR BREWING CO., Inc., and Chicago Title and Trust Company as Trustee, et al., Defendants-Appellees.**

**No. 11431.**

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1955.

**360**

P. Wagman, Special Assts. to the Atty. Gen., for the United States.

William H. Avery, Jr., Kenneth F. Burgess, Chicago, Ill., Edward P. Saltiel, Chicago, Ill., for appellee. George Ragland, Jr., Walter J. Cummings, Jr., Henry A. Preston, Chicago, Ill., for White Bear Brewing Co., and Chicago Title and Trust Co., as Trustee, defendants-appellees, Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Defendant White Bear Brewing Co., Inc., is the record title-holder of property which the government, as plaintiff, by its action, filed below, would have sold, and the proceeds distributed. Chicago Title and Trust Company is a co-defendant in its capacity under defendant's purchase-money mortgage in trust deed form.

Defendant filed a motion to dismiss the government's complaint, and as the district judge cogently summarized this aspect of the record: "The defendant has filed with its motion an affidavit setting forth additional facts, and plaintiff has in its brief presented certain facts which it offers to support by affidavit. I will assume that the latter are correct without requiring a formal affidavit. Since matters outside the pleadings have been introduced, the motion will be treated under Rule 12(c) as a motion for summary judgment and disposed of under Rule 56 [Fed.Rules Civ.Proc. 28 U.S. C.]." Both parties filed briefs. By his final decree, supported by a memorandum of opinion, the trial judge allowed fendants' motion to dismiss the complaint. That decree is now before us. No question of the taxpayer's solvency is involved.

Robert Tieken, U. S. Atty., Chicago, Ill., H. Brian Holland, Asst. Atty. Gen., Joseph F. Goetten, U. S. Dept. of Justice, Ellis N. Slack, Hilbert P. Zarky, Stanley

Absent material issues of fact, we can present a sequential listing of events which will bring into sharp relief significance of certain timing:

May 19, 1947 —Deutsch completed work pursuant to contract entered into on February 14, 1946 with Frederick's Brewing Co. for improvements on real estate in question.

September 2, 1947 —Deutsch recorded his Illinois mechanics lien. This sworn claim of lien contained a legal description of the real estate involved in the present appeal and stated the amount of lien as $8,286.00.

November 13, 1947—Deutsch filed suit in the Circuit Court of Cook County, Illinois, in equity, to foreclose his mechanics lien. Case No. 47C 14529.

November 13, 1947 —Commissioner of Internal Revenue made an assessment of $8,709.70 against Frederick's Brewing Co., also known as McAvoy Brewing Co., Inc., for income taxes owing for the year 1947.

November 15, 1947 —Summons in the lien foreclosure suit served on Frederick's Brewing Company.

November 17, 1947 —Assessment list received by the U. S. Collector, First District, Illinois.

December 14, 1948 —Assessments by Collector against McAvoy Brewing Co., Inc., for:
(i) withholding taxes owing for the 3rd quarter, 1947. $6,362.91.
(ii) withholding taxes owing for the 4th quarter, 1947. $4,047.81.
(iii) withholding taxes owing for the 1st quarter, 1948. $2,312.55.

December 16, 1948 —Notice of tax liens [concerning assessments listed under date of December 14, 1948, *supra*] filed in Recorder's office, Cook County, Ill.

December 17, 1948 —Collector received assessment list.

December 17, 1948 —Assessments by Collector against McAvoy Brewing Co., for:
(i) Federal Insurance Contributions Act, 26 U.S.C. § 1400 et seq., taxes owing for 3rd quarter, 1947. $911.17.
(ii) Federal Insurance Contributions Act taxes owing for 4th quarter, 1947. $245.41.
(iii) Federal Insurance Contributions Act taxes owing for 1st quarter, 1948. $520.22.
(iv) Federal Unemployment Tax Act, 26 U.S.C. § 1600 et seq., taxes owing for year 1947. $1,817.39.

December 22, 1948 —Assessment list received by Collector, First District, Ill.

December 29, 1948 —Notice of tax liens filed with Recorder of Deeds, Cook County, Illinois.

April 28, 1949 —Notice of Federal tax lien filed with Recorder of Deeds, Cook County, Illinois. (Covering income taxes of 1947, T. R. 8.)

April 28, 1949 —Decree of foreclosure and sale entered in Deutsch's case No. 47C 14529. Judgment entered in favor of Deutsch, the materialman, for $10,502.35.

June 28, 1949 —Date of Master's sale.

June 28, 1949 —Property in question sold to Deutsch, Mechanic's lien-holder, at public auction for $11,500 pursuant to decree in No. 47C 14529.[1]

September 22, 1949—Certificate of sale issued to Deutsch and recorded in Cook County, Illinois.

September 30, 1949—By its decree, Illinois Court approved sale of property to Deutsch by the Master in Chancery.

November 1, 1949 —McAvoy Brewing Co., Inc., shutdown.

September 27, 1950—Deutsch assigned his certificate of sale to Yavitz.

September 28, 1950—Master's deed issued to Yavitz, in the absence of redemption.

November 2, 1950 —Yavitz recorded the Master's deed.

July 22, 1952 —Yavitz and wife conveyed property in question to Emma Janninga.

July 22, 1952 —Recording date of Janninga's transference of title to White Bear Brewing Co., Inc. (one of the defendants here). A part purchase-money mortgage in trust deed form, from White Bear to Chicago Title and Trust Co., to secure grantor's $31,000 note, was also recorded at this time. The total purchase price paid by defendant White Bear was $36,000.

November 10, 1953 —Government suit seeking to have property sold and proceeds distributed, filed below.

According to the "Statement"[2] (mentioned in the District Judge's memorandum) sponsored by the government, in its brief opposing defendants' motion to dismiss, notices were filed of liens for the assessments itemized in its complaint amounting to $16,217.46 and, it appears, another notice of lien, in the amount of $7,922.01 was filed on April 28, 1949. But after examining the government's complaint, filed below, we find this latter notice of lien unmentioned, while the total amount claimed, in that pleading, was $16,217.46 plus interest. However, a marginal note in the plaintiff's brief suggests an explanation:[3]

"Although the District Court's memorandum does not mention employment taxes, they are nevertheless a part of this total amount. The amounts appearing in paragraphs 5 through 11 of the complaint (R. 7–9) and the next to last paragraph on page 4 of plaintiff-appellant's statement (R. 27) are exclusive of penalties or interest where due, and total $24,139.47. However, defendant-appellees admitted in their answer (R. 12) that notices of federal tax liens totaling $25,359.16 were filed in amounts including interest and penalties. The exact amounts are not material to the issues before this Court since the amount of liens exclusive of interest and penalties still exceeds the amount of proceeds from the foreclosure of the material-man's lien, $11,500. (R. 26.)"

Mirrored against the backdrop of dates and facts, we have already shown,

1. A complaint in chancery, filed in the Circuit Court of Cook County, Illinois, entitled Fred W. Deutsch v. Frederick Brewing Company, et al. (T.R. 22).

2. T.R. 26. This is the statement referred to by the district judge in his "Memorandum."

3. Plaintiff's brief, p. 2.

plaintiff sought the following relief below:[4]

"That all persons having lien upon or claiming any interest in the property or rights to property hereinabove described be required to submit their claims; that the merits of all claims to and liens upon the property be finally determined; that the defendants and all persons claiming under them or any of them subsequent to the commencement of this action be barred and foreclosed of all right, title and interest, or lien and claim to the property and all part thereof; that the lien of this plaintiff for its taxes assessed be established and enforced against property described in its complaint; *that the property be ordered sold* in accordance with the law and the practice of this Court and that the fund resulting from such sale be ordered distributed according to the findings of the Court, in accordance with the rights and interests of the parties defendant in this suit and the United States."· (Italics added.)

Because there are several cases (See: Appendix I) which on first blush seem to dispose of this appeal, adversely to defendants, we think dissecting the two liens asserted, will be revealing.

### I. The Government Tax Lien

Section 3670 of the Internal Revenue Code of 1939 [5] creates the lien pressed by the government in this appeal:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount *(including any interest, penalty, additional amount, or addition to such tax,* together with any *costs that may accrue in addition thereto)* shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." (Italics supplied.)

Obviously, Congress did not confer any priority [6] of the lien generated by § 3670. United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L. Ed. 520. When a lien arises, and its durations are provided for in § 3671:[7]

"Unless another date is specifically fixed by law, the lien *shall arise at the time the assessment list was received by the collector* and shall continue until the liability for such amount is satisfied *or becomes unenforceable by reason of lapse of time."* (Italics ours.)

That a § 3670 lien is not a completely perpetual automatic vise clamped upon all property belonging to any person liable to pay any tax, upon his neglect or refusal to pay, is clear from that last alternative qualification in § 3671 and § 3672:[8]

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector　*　*　*."

The struggle for relative priority between federal tax liens and other liens created by State legislatures, is usually staged in the environment of those Federal statutory sections just cited because, *inter alia:* "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." United States v. Security Trust & Sav. Bank, 1950, 340 U.S. 47, 49, 71 S.Ct. 111, 113, 95 L.Ed. 53. We are confronted, then, with the problem, elusive though it may be, of investigating this federal tax *lien* in order to discover how it dif-

---

4. A full reprint of the prayer of plaintiff's complaint, is presented in our text.

5. 53 Stat. 448, 26 U.S.C. § 3670 (1952).

6. Section 3466 of the Revised Statutes, Rev.Stat. § 3466 (1875), 31 U.S.C.A. § 191, is an express enactment of first priority for debts to the United States whenever the debtor is *insolvent.*

7. 53 Stat. 449, 26 U.S.C. § 3671 (1952).

8. 53 Stat. 449, as amended, 53 Stat. 882, 26 U.S.C. § 3672 (1952). The section had been amended by § 401, I.R.C.1939, c. 247, and later § 505, Rev.Act of 1942, c. 619, 56 Stat. 798. For a view of the legislative history of § 3672 see the concurring opinion of Mr. Justice Jackson in United States v. Security Trust & Sav. Bank, 1950, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53.

fers, basically, intrinsically, or at all, from a mechanic's lien created by Illinois statute. Indeed the search is stimulated by the government's assertion that its federal tax lien is "considered to be perfected *ab initio.*" [9] This, despite the barren recitation of "a lien" in § 3670.

Congress has said nothing, in the relevant statutory provisions, revealing any inherent superiority, special, peculiar, dignity, and singular characteristic or attribute of the federal tax lien. Indeed it merely used the word *lien* and let it go at that. "Lien" like most words is simply the outer covering in which a bundle of ideas have been wrapped for delivery to auditors and readers. The word is of French ancestry and, in its early usage, was taken to mean bond or tie. Chief Justice Marshall manifested a similar idea when delivering the opinion reported as Rankin v. Scott, 1827, 12 Wheat. 177, 25 U.S. 177, 179, 6 L.Ed. 592:

> "The principle is believed to be universal, that prior lien gives a prior claim, which is entitled to prior satisfaction, out of the *subject it binds,* unless the lien be intrinsically defective or be displaced by some act of the party holding it, which shall postpone him, in a court of law or equity, to a subsequent claimant." (Italics added.)

Indeed, after citing and quoting that passage from Rankin v. Scott, 1827, 12 Wheat. 177, 25 U.S. 177, 179, 6 L.Ed. 592, Mr. Justice Minton, speaking for a unanimous court in United States v. City of New Britain, 1954, 347 U.S. 81, 83, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520, said: "We think that Congress had this car-

dinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate." Parenthetically, at least, we must record our awareness of United States v. Colotta, 1955, 79 So.2d 474, 477 where the Supreme Court of Mississippi, determining priority between a mechanics lien and a § 3670 lien, relied upon the New Britain case, only to be recently summarily reversed by a terse order of the United States Supreme Court. United States v. Colotta, 76 S.Ct. 82.

We have been advised by the Clerk of the United States Supreme Court that the respondents, Colotta, et al., filed no brief and the record was not printed. From our examination of the unopposed petition [10] for certiorari, filed by the government in United States v. Colotta, supra, we find that among other reasons urged for granting the writ was the alleged conflict between the Mississippi Court's decision [11] and an opinion reported as United States v. Kings County Iron Works, Inc., 2 Cir., 1955, 224 F.2d 232. We are cited to the Kings County case by the government in the appeal now before us. Chief Judge Clark, delivering the opinion in United States v. Kings County Iron Works, Inc., 2 Cir., 1955, 224 F.2d 232, 234 stated the question for disposition, as involving " * * * the relative priority of a federal tax lien and a mechanic's lien under state law", and the ruling below:

> "The district court awarded priority to Kings as a 'purchaser' protected from *unfiled* federal liens pursuant to I.R.C. § 3672, and as a prior

9. Plaintiff's reply brief, p. 1.

10. On page two, of the government's petition, the "Question Presented" is: "Whether a lien of the United States for unpaid federal taxes, arising under Sections 3670 and 3671 of the Internal Revenue Code of 1939, is superior to a statutory mechanic's lien accorded by state law to contractors, laborers and materialmen, where the contract giving rise to the mechanic's lien had been performed

*but no steps had been taken to file or enforce such lien before the federal lien arose and was recorded.*" (Emphasis supplied.)

11. The Supreme Court of Mississippi decided United States v. Colotta, 79 So.2d 474 on April 18, 1955. United States v. Kings County Iron Works, Inc., 224 F. 2d 232 was argued before the Second Circuit April 12, 1955 and that Court's decision is dated June 29, 1955.

lienor by virtue of its filing of its mechanic's lien in New York County on August 27, 1947. Judge Abruzzo concluded that the government's prior filing on August 21 in Kings County, where Preferred resided, was defective in that under N. Y. Lien Law, McKinney's Consol. Laws, c. 33, § 240 the government should also have filed in New York County, where the funds and premises in question were located. D.C. E.D.N.Y., 122 F.Supp. 219. The government's appeal challenges Judge Abruzzo's final conclusion, as well as his subordinate findings concerning the character of the mechanic's lien and the sufficiency of the government's filing." (Italics supplied.)

The hard core of the King's County, case lies embedded in this sentence of the Second Circuit's opinion:

"Here the assessment lists (ed. Federal) were *all received prior* to August 21, 1947, when notices of the liens were filed." 224 F.2d 232, 234. Italics added.

Moreover the following passage from the Second Circuit's opinion, 224 F.2d 232, 235, spells out another difference between that case and the one we are reviewing:

"Our reading of the statutes and the cases leads us to conclude that, at least for purposes of federal taxation, Kings must be considered essentially like the holder of an attachment or a garnishment lien before it has matured into a judgment. The use of a trust fund rationale by New York in order to give the mechanic's lienor this kind of lien may be the result of the severe restrictions ordinarily imposed by that law on the attachment of debts. See N. Y. Civil Practice Act § 916. Until and unless the mechanic's lienor perfects his rights to the trust fund by filing a timely civil action in accordance with § 75 of N. Y. Lien Law, the contractor retains a paramount interest in the property in question, so

that the debt belongs *to him* and is subject to federal levy as such. Furthermore, until such a suit is brought, the fact and the amount of the final mechanic's lien remain uncertain. This means that for federal tax purposes the state lien is general and inchoate until such time."

Returning for a moment, to the petition for certiorari, filed in United States v. Colotta, supra, we point out that on page 7, the government stated:

"While the contracts under which respondent's mechanics' lien are asserted were completed before the federal tax liens arose (December 5, 1952) and were recorded (December 8, 1952), respondents had neither recorded their contracts under Section 359 of the Mississippi Code * * * nor filed the *lis pendens* notice provided for by Section 380 of that Code * * *. Respondent Reinhart ultimately filed his contract on December 31, 1952 * * * respondents Chambless and Long, so far as the record reveals, never filed theirs. And the record shows no *lis pendens* notice of either contract filed at anytime." (Italics original text.)

United States v. Scovil, 1955, 348 U. S. 218, 75 S.Ct. 244, is the third part of the trilogy made up of Acri and the Liverpool & London Globe Ins. Co., Ltd., cases, relied upon by the government. As Mr. Justice Minton said, Scovil, involved "the relative priority of a landlord's distress for rent under the laws of South Carolina and a lien for unpaid taxes due the United States." 348 U. S. 218, 75 S.Ct. 245. The nub of the Scovil decision is best described by the Court's own words: "The landlord had a lien other than a mortgage, pledge, or judgment lien * * * the distress lien was not perfected in the federal sense at the time the Government's lien were filed. Such perfection is, of course, a matter of federal law * * *." 348 U.S. 220, 75 S.Ct. 246.

 New Britain brings into play the word *choate*, which, though of rare

usage, suggests completeness. Section 3678 [12] authorizes institution of a civil suit, by the government in order to satisfy its lien. In this respect the government, as lienholder, must, even as does the mere mechanics' lienholder, pursue its remedy in order to collect money by virtue of a lien. Interest accruing on a debt secured by a federal tax lien remains an unknown quantity until that lien is foreclosed.

Michigan v. United States, 1943, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312, cited to us by the plaintiff, is inapposite despite some language that, on first reading seemingly supports the government's position in this appeal. It was there contended that local realty tax liens were to be given superiority, under state statutes, over a federal tax lien. That argument was quickly rejected because, inter alia, " * * * the federal lien * * * attached to private property prior to the acquisition of any interest in that property by the state * * * " (Italics ours), and accordingly the Court simply said " * * * we need not consider the extent to which Congress may give, or intended by § 315(a), 26 U.S.C.A. Int.Rev.Acts, page 253, to give, priority to a federal lien over a previously perfected state lien." 317 U.S. 338, 341, 63 S.Ct. 302, 303. The Michigan case paid homage to the supremacy clause of the Constitution, recognizing, as we do, that the " * * * establishment of a tax lien by Congress is an exercise of its constitutional power 'To lay and collect Taxes'. Article I, § 8 of the Constitution." Had Michigan been decided otherwise, it would have been possible for a state to make its own real estate tax liens superior to a federal tax lien though the latter lien attached to the property first.

Another familiar instance concerning priority of payments from assets of a common debtor was disposed of in People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct.

340, 91 L.Ed. 348, adversely to the State of Illinois, as lienholder. There the Illinois Director of Labor sued, in one of its State courts, to enforce a statutory lien for unemployment contributions due Illinois from Chicago Waste and Textile Company, an allegedly insolvent debtor. Illinois attempted to defeat the express priority given to federal tax liens by Congress through Rev.Stat. § 3466, 31 U.S.C.A. § 191 on the theory that the State's lien was specific and perfected. But § 3466 is applicable only to insolvent debtors; it has no relevancy to the matter now under consideration.

Mr. Justice Story long ago wrote, recognizing the nonexistence of federal common law, this trenchant pertinent passage in United States v. State Bank of North Carolina, 1832, 6 Pet. 29, 31 U.S. 29, 35, 8 L.Ed. 308:

"The right of priority of payment of debts due to the government, is a prerogative of the crown well known to the common law * * * The claim of the United States, however, does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes." (Emphasis supplied.)

The thrust of Justice Story's words can only be parried by a tortured reading of § 3670. Congress has just simply refrained from writing a priority into § 3670, as it did in § 3466. Whether it has the power to do so is quite beside the mark, nor can we speculate upon policy considerations, which are beyond our province in any event. Section 3670 is silent as to priorities. We think it should be left undisturbed on the facts involved in this appeal.

As we view it there is no particular magic lurking in the word lien found in § 3670. Surprisingly enough, whatever is said about an Illinois mechanics lien also fits a federal tax lien, unless we are to insert a judicial rubic in § 3670.

12. 53 Stat. 450, 26 U.S.C. § 3678 (1952).

## H. The Mechanics Lien

Pursuant to an Act [13] for revision of Illinois laws relating to mechanics liens, passed by the State General Assembly:

"§ 1. Any person who shall by any contract or contracts, express or implied, * * * with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, furnish material, fixtures, apparatus or machinery, forms or form work used in the process of construction where cement, concrete or like material is used for the purpose of or in the building, altering, repairing or ornamenting any house or other building, * * * or furnish or perform labor or services as superintendent, time keeper, mechanic, laborer or otherwise, in the building, altering, repairing or ornamenting of the same; or furnish material, fixtures, apparatus, machinery, labor or services, forms or form work used in the process of construction where concrete, cement or like material is used * * * shall be known under this Act as a contractor, and *shall have a lien upon the whole of such lot or tract of land* and upon adjoining or adjacent lots or tracts of land of such owner constituting the same premises and occupied or used in connection with such lot or tract of land as a place of residence or business; and in case the contract related to two or more buildings, on two or more lots or tracts of land, upon all such lots and tracts of land and improvements thereon *for the amount due to him for such material,* fixtures, apparatus, machinery, services or labor, and interest *from the date the same is due.* This lien shall extend to an estate in fee, for life, for years, or any other estate or any right of re-demption, or other interest which such owner may have in the lot or tract of land at the time of making such contract or may subsequently acquire therein, and shall be superior to any right of dower of husband or wife in said premises: Provided, the owner of such dower interest had knowledge of such improvement and did not give written notice of his or her objection to such improvement before the making thereof; nor shall the taking of additional security by the contractor or sub-contractor be a waiver of any right of lien which he may have by virtue of this Act, unless made a waiver by express agreement of the parties; *and this lien shall attach as of the date of the contract."* (Italics added.)

"§ 7. No contractor shall be allowed to enforce such lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after completion, or if extra or additional work is done or material is delivered therefor within four months after the completion of such extra or additional work * * *, he shall either bring suit to enforce his lien therefor or shall file with the clerk of the Circuit Court in the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by the affidavit of himself, or his agent or employee, which shall consist of a brief statement of the contract, the balance due after allowing all credits, and a sufficiently correct description of the lot, lots or tracts of land to identify the same. *Such claim for lien may be filed at any time after the contract is made, and as to the owner may be filed at any time after the contract is made and within two years after the completion of said contract,* or the com-

13. Ill.Rev.Stat.1953, chap. 82, §§ 1–39, S. H.A. chap. 82, §§ 1–39. See: e. g. Robertson v. Huntley & Blazier Co., 1953, 351 Ill.App. 378, 384, 115 N.E.2d 533; Schoenberg Mfg. Co. v. Broadway Hotel Corp., 1930, 259 Ill.App. 40, 42.

pletion of any extra work or the furnishing of any extra material thereunder, and as to such owner may be amended at any time before the final decree. *No such lien shall be defeated to the proper amount thereof, because of an error or over charging on the part of any person claiming a lien therefor under this act,* unless it shall be shown that such error or overchange is made with intent to defraud; nor shall any such lien for material be defeated because of lack of proof that the material after the delivery thereof, actually entered into the construction of such building or improvement, although it be shown that such material was not actually used in the construction of such building or improvement * * *." (Italics ours.)

Speaking of section 7, quoted above from the Illinois Act, the State Supreme Court noted in United Lock Companies v. Volland, 1937, 365 Ill. 564, 7 N.E.2d 301, 305:

"These provisions of the statute disclose a manifest legislative intent to remove, as far as practicable, technical requirements as a material element of the right to enforce a valid lien, and to clarify questions touching the materiality of the steps prescribed by the statute. A salient provision is that no lien *shall be defeated* because of unintentional error. * * *" (Italics added.)

### III. Conclusions

This appeal reflects several singular distinguishing characteristics in contrast with the cases already discussed and those analyzed in Appendix I: (i) the mechanic's lienholder acquired, recorded and commenced his foreclosure suit before the first relevant assessment list was received by the U. S. Collector, (ii) the property involved has long since left the taxpayer's hands and MacAvoy Brewing Co. is completely divested of any title or interest, (iii) the government did not participate, in any manner, in the Illinois Mechanic's lien foreclosure proceedings despite Deutsch's prior recordation of his lien. As we mentioned earlier, in this opinion, Deutsch's claim contains a legal description of the property on which his lien attached, a statement of the basis for the claim and a recital of the specific dollar amount claimed. Our canvass of the record fails to show how the federal tax lien was any more specific or particular than Deutsch's lien. We notice an unexplained difference between Deutsch's original claim of $8,286.00 and his judgment, obtained therein, for $10,502.35. There is also a marked time lag between the first federal tax lien (November 17, 1947) and plaintiff's commencement of suit on November 10, 1953, which lead to the judgment appealed.

It is quite clear that the only way the government can prevail on these facts is to have us reject the rule, " 'the first in time is the first in right,' " reiterated by Mr. Justice Minton in United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520. To persuade us in doing so, the government cites us to the cases, among others, which we present in Appendix I. From our analysis it is patent that all these cases shown in Appendix I, vary factually from the instant appeal. Furthermore, it is contended in support of priority for the federal lien "that no doctrine of relation back can be said to apply to preempt the federal lien" (Government brief, p. 5). In response to the natural inquiry why, we are referred, through circular reasoning, back to United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239; United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244; United States v. Liverpool & London Ins. Co., 1955, 348 U.S. 215, 75 S.Ct. 247.

It appears from this trio of cases that since a federal lien, by force of § 3672, is not "valid as against any mortgagee, pledgee, purchaser, or judgment creditor * * *" the Supreme Court has construed § 3672 to also mean that a lienholder (other than one arising through § 3670) who has not perfected his lien thus fails in qualifying as a "purchaser, or judgment creditor" and

consequently the federal lien rises to priority irrespective of the time when it attached. We think such reasoning attributes to Congress an intention to deprive State lienholders of priority contrary to the principle, first in time first in right. The wording of § 3672 makes the federal lien invalid against the three classed exceptions until notice has been filed by the collector.

What actually emerges from this appeal are competing liens, one, the mechanics lien held by a claimant who was neither a mortgagee, purchaser or judgment creditor when the government's liens "arose variously on November 17, 1947, and December 17 and 22 of 1948" (Govt. brief, p. 2), and, the other, federal liens not sued upon until November 10, 1953. Section 3678 [14], closely resembling the method for reducing an Illinois Mechanic's lien to judgment, provides, *inter alia* that upon the filing of a civil action in a U. S. District Court: (a) " * * * to enforce the lien of the United States * * * (b) * * *. All persons having liens upon or claiming any interest in the property or rights to property sought to be subjected * * * shall be made parties to such proceedings and be brought into court," and also:

"The said court shall, at the term next after the parties have been duly notified of the proceedings, unless otherwise ordered by the court, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property and rights to property in question, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property and rights to property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

Language virtually identical with § 3678(a), i. e., "to enforce the lien" appears in section 9 of the Illinois statute [15] governing Mechanics' liens—"If payment shall not be made * * * (the) contractor may bring *suit to enforce his* lien * * *." We think both the government and Deutsch had liens and by force of the applicable statutes were, respectively required, to bring suit "*to enforce* (their) liens." Clearly, these two liens simply had different periods of gestation.

By its failure to show that the taxpayer (Fredericks-MacAvoy Brewing) was insolvent, plaintiff brings the problem within the framework erected by this passage from United States v. City of New Britain, 1954, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520:

"When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U.S. C. (1946 ed.) § 191, 31 U.S.C.A. § 191. In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority. Where the *debtor is not insolvent, Congress has failed to expressly provide for federal priority * * ** although the United States is free to pursue the whole of the debtor's property wherever situated. The State, having a lien only upon property within its boundaries, may not reach beyond the state line to fasten its lien upon other property. The *record does not establish that the taxpayer in this case was insolvent.*

"It does not follow, however, that the City's lien must receive priority as a whole. *We believe that priority of these statutory liens is determined by another principle of law, namely,* 'the first in time is the first

---

14. 53 Stat. 450, 26 U.S.C. § 3678(a–c) (1952).

15. Ill.Rev.Stat.1953, chap. 82, § 9, S.H. A. chap. 82, § 9.

in right'." (Italics added. Footnotes omitted.)

Since we do not find ourselves barred legislatively from adherence to the principle of time priority enunciated in the New Britain case, still unreversed, we will follow it. Of course the most serious deference is to be accorded Security Trust & Savings Bank, Acri Liverpool & London Ins. Co., and Scovil opinions, yet we think in the factual setting presented by the current appeal, the issue of relative priority must yield to the rule reported by Chief Justice Marshall, quoted in New Britain and adumbrated by Mr. Justice Story. We are unable to view § 3670 as a citadel for the federal tax lien invulnerable to the time when Deutsch's lien attached to the taxpayer's property. Accord: United States v. Albert Holman Lumber Co., 5 Cir., 1953, 206 F.2d 685; United States v. Martin Fireproofing Corp., 6 Cir., 1948, 168 F.2d 808.

While we think defendant's position resting upon their *lis pendens* argument suggests some merit it is unnecessary to reach that point because the judgment appealed is hereby affirmed.

Affirmed.

19

### APPENDIX I—SYNOPTIC ANALYSIS OF SELECTED

NATURE OF, AND AUTHORITY FOR LIENS INVOLVED IN LITIGATION

| NAME OF CASE | DATE DECIDED[1] | ACTION INSTITUTED BELOW | FEDERAL | | OTHERS | |
|---|---|---|---|---|---|---|
| | | | TAX LIEN | STATUTORY AUTHORITY | TYPE OF LIEN | STATUTORY AUTHORITY |
| United States v Security Trust & Sav Bank. 340 U.S. 47, 71 S Ct 111 | Nov 13, 1950 | Quiet title, foreclose mortgage | Yes | 53 Stat 448, 449, 26 USC §§ 3670, 3671 3672 | Attachment[3] | Deering's Cal Code Civ.Proc., Ann., 1941, §§ 537 & 542, West's Ann Civ Code, §§ 537, 542. |
| United States v City of New Britain. 347 US 81, 74 S Ct 367 | Feb 1 1954 | Mortgage foreclosure | Yes | IRC §§ 3670, 3671. 26 U.S.C (1946 ed.) §§ 3670, 3671. | City real estate taxes[2] City water liens.[2] Judgment of record. Two mortgages | Conn Gen Stat.1949, c. 88, § 1853, c 34, § 758. Conn.Gen Stat 1949, c 34, § 758. |
| United States v Acri 348 US 211 75 S Ct 239 | Jan 10 1955 | Suit for collection of unpaid Federal income taxes, taxpayer defendant | Yes | (4) | Attachment | Ohio (5) |
| United States v Liverpool & London Ins Co 348 US. 215, 75 S Ct 247 | Jan. 10 1955 | Garnishment—Interpleader | Yes | None cited | Garnishment Attorney's fees. | None Rule 677, Vernon's Texas Rules of Civil Procedure. |
| United States v Colotta. 76 S Ct 82 [Reported below in Miss, 1955, 79 So. 2d 474][6] | Oct 10, 1955[7] | SEE ORDER ENTERED ON OFFICIAL JOURNAL OF U S SUPREME COURT[8] — Suit on mechanics lien | Yes | §§ 3670, 3671, 3672, 26 USC 1952 ed | Mechanic's lien | § 356 et seq. Miss.Code of 1942. |

NOTES

1 Mr Justice Minton wrote the majority opinion unless otherwise indicated.
2 City's liens attached to the specific real estate involved
3 In United States v City of New Britain, 1954, 347 US. 81, 86, 74 S.Ct 367, 370, it was stated "*The Security Trust* case involved an *inchoate* attachment lien that had not ripened into a judgment at the time the federal tax lien attached." (Italization appears in original text)

4 Only § 3672 is cited by the court
5 The Ohio statute received mention in this fashion. "* * * the fact that the Ohio courts had designated an attachment lien, an execution in advance' * * * and treated it as a perfected lien at the time of attachment, does not bind this Court." 348 US 211, 213, 75 S Ct 239, 241

LINDLEY, Circuit Judge (dissenting).

In United States v. Security Trust & Savings Bank, Executor, 340 U.S. 47, 71 S.Ct. 111, 113, 95 L.Ed. 53, the Supreme Court was concerned with the question of when a lien attached under an attachment writ under the California code. That statute provided that: "The lien of the attachment on real property attaches and becomes effective upon the recording of a copy of the writ, * * * and a notice that it is attached with the county recorder of the county wherein said real property is situate * * *. The attachment * * * shall be a lien upon all real property attached for a period of three years after the date of levy unless sooner released or discharged * * *." West's Ann.Code Civ. Proc. § 542a. The Court, after commenting that a state court's classification of a lien as specific and perfected, though entitled to weight, when determining priority of federal tax liens, "is subject to reexamination by this Court", said, 340 U.S. at page 50, 71 S.Ct. at page 113: "The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment

CASES DISCUSSED BY PARTIES TO THIS APPEAL.

| SUBJECT MATTER CHARGED WITH LIENS | FACTS REFLECTED IN REVIEWING COURTS' OPINION | DECISION AT TRIAL COURT LEVEL | DISPOSITION BY U. S. SUPREME COURT |
|---|---|---|---|
| Purchase price and surplus from proceeds of foreclosure sale | Oct 17, 1946, M sued S on unsecured note, attached four parcels realty<br>Dec. 3, 5, 10, 1946, U S filed notices of tax liens in County Recorder's Office.<br>Apr 24, 1947, M obtained judgment against S.<br>May 2, 1947, M recorded judgment in County Recorders Office<br>Suit to quiet title commenced by plaintiffs, who purchased one parcel from S Plaintiffs paid purchase price into court<br>Three separate mortgage foreclosures on other three parcels<br>U S & M named parties defendant | Balance of purchase price any surplus from foreclosure sales, after mortgages received payment applied *first* to M's judgment lien *secondly* for payment federal tax lien | U S tax lien held superior to M's inchoate attachment lien Reversed |
| Funds realized through foreclosure judgment sale | 1947 through 1951—City realty taxes due [liens attached as of Oct 1 or other assessment date of the prior year]<br>Dec 1, 1947 to June 1, 1951—City water rent liens arose upon failure to pay<br>April 26, 1948 to Sept 21, 1950—Assessment lists received by U. S. Collector of Internal Revenue and federal liens then arose | Funds available for distribution being insufficient Conn Court ordered this priority of payment<br>(1) Expenses<br>(2) City liens<br>(3) Mortgages<br>(4) Judgment liens<br>(5) Federal tax lien | City's liens do not receive priority as a whole Priority of these statutory liens is determined by another principle, the first in time is the first in right Judgment below vacated and case remanded to State Court to have determined the order of priority of various liens" per opinion Remanded |
| Funds in federal taxpayer's safety deposit box | August 6, 1947—O filed suit for wrongful death against A and attached contents of his safety deposit box<br>Nov 18, 1947, U S Collector of Internal Revenue received assessment lists<br>Nov 19, 1947—Demand for payment of taxes served on A<br>Nov 21 1947—Notice of U S tax liens filed in Recorder's Office<br>Aug 11, 1948—U S filed suit in District Court, against A to collect unpaid income taxes<br>Jan 19, 1949—O recovered judgment from A [6] | District Court found the attachment prior to the liens of the United States | Issue being identical with that in United States v Security Trust Co 340 U S 47, 71 S Ct 111 * * * the * * * answer here is the same * * * and for the same reasons 348 U S 211 213 75 S Ct 239 241 Reversed |
| Proceeds of insurance money payable to taxpayer for fire loss | Mar 8, 1952—A's property destroyed by fire subsequently insurance companies agreed on loss<br>April 8, 1952—Creditor S sued A on an open account and attached funds in carriers hands due and owing to A<br>April 21, 1952—Assessment lists for 1948 & 1950 received in office of local Collector of Internal Revenue<br>April 26, 1952—Notice of Federal tax liens filed in local county clerk's office<br>Notice of tax liens, warrants of distraint and notice of levy served on insurance company<br>June 20, 1952—Judgment entered against A in favor of creditor S<br>Garnishee, insurance company, named government as defendant and requested court's determination of priorities<br>Case removed to U S District Court | District Court held the lien of garnishee superior to tax liens | Question of priorities held to be identical with United States v Acri 348 U S 211 75 S Ct 239, and United States v Security Trust Co 340 U S 47 71 S Ct 111 'On authority of those cases * * * the tax liens of the United States (are) superior to the lien of the garnishee' 348 U S 215, 217 75 S Ct 247, 248 Attorney's fees also denied priority over tax lien Reversed |
| Real property in hands of taxpayer [8] | May-June, 1952—Construction contract executed between A, B & C to do work on property in question."<br>May 7, 1952—C mortgaged property to H for loan to pay A and B<br>Nov 3, 1952—Work completed, balance owing to A & B<br>Dec 5, 1952—U S Director of Internal Revenue received assessment list covering C's tax years 1946 to 1949<br>Dec 8, 1952—Director filed notice of Federal tax lien with local county clerk<br>Mar. 26, 1953—A & B sued C to recover judgment under mechanics lien [9] | Miss Supreme Court affirmed decision according priority to mechanics lien over Federal tax lien | "The petition for writ of certiorari in this case is granted and the judgment is reversed 76 S Ct 82 |

NOTES

6. Nothing appears in the Court's opinion showing when the Government obtained judgment in its suit against taxpayer

7. Per Curiam Mr Justice Douglas dissenting

8. The charted facts were drawn from the Mississippi Court's decision

9. Under the Mississippi Code of 1942 it appears, 79 So 2d 474, 475, that real property "shall be liable for the debt contracted and owing, for labor done and materials furnished, and that such debt shall be a lien thereon from the time of making the contract "

within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate— merely a *lis pendens* notice that a right to perfect a lien exists." It added: "Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison did not have a judgment lien. He had a mere '*caveat* of a more perfect lien to come.' People of the State of New York v. Maclay, 288 U.S. 290, 294, 53 S.Ct. 323, 324, 77 L. Ed. 754." I think this case can not be distinguished from the present one. In California the lien of the attachment on real property "attaches and becomes effective" upon the recording of the writ. In Illinois the mechanic's claim of lien likewise becomes effective upon recording it. The reasoning of the Security case, it seems to me, is directly applicable to the present case.

In United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 241, an attachment writ had issued in Ohio. The court of that state treated the writ as a perfected lien at the time it was filed. This, the Supreme Court said, made the issue identical with that of the Security Trust case. "The relative priority of the lien of the United States for unpaid taxes is, as we said in United States v. Waddill Co., 323 U.S. 353, 356, 357, 65 S.Ct. 304, 306, 89 L.Ed. 294; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348; United States v. Security Trust & Sav. Bank Co., 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53, always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court. United

States v. Waddill Co., 323 U.S. 353, at page 357, 65 S.Ct. 304, at page 306, 89 L.Ed. 294; United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L. Ed. 1071." It continued: "Therefore, the fact that the Ohio courts had designated an attachment lien 'an execution in advance,' Rempe & Son v. Ravens, 68 Ohio St. 113, 67 N.E. 282, 286, and treated it as a perfected lien at the time of attachment, does not bind this Court. We must look at the circumstances as we did in the Waddill case, where the Virginia court had held a landlord's lien was fixed, specific, and not inchoate." It concluded: "In argument it was pointed out that the statute of California involved in the Security Trust case was different because California courts had held an attachment lien to be inchoate and a mere notice of a more perfect lien to come, while Ohio courts had held it to be an execution in advance and a lien perfected as of the time of attachment. This distinction is immaterial for purposes of federal law. This case is not to be distinguished from United States v. Security Trust & Sav. Bank Co., 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, and the judgment is Reversed." 348 U.S. at pages 213, 214, 75 S.Ct. at pages 241, 242.

In United States v. Liverpool & London Ins. Co., 348 U.S. 215, 75 S.Ct. 247, the Court was concerned with the question of relative priority of a garnishment lien, a writ for which had been issued before the Government gave notice of its lien for taxes. The district court held the lien of the garnisher superior to that of the United States. The Court of Appeals affirmed, 5 Cir., 209 F.2d 684. On certiorari, the Supreme Court held that the question of priorities was identical with that in United States v. Acri, and United States v. Security Trust & Sav. Bank Company, and held the tax lien superior to the garnishment.

In United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, a landlord had levied a distress lien under South Carolina law before a federal tax lien had attached.

The claim was not reduced to judgment until after notice of the federal lien. The Court held that the Government must prevail because of its liens under Section 3670 of the Internal Revenue Code, saying, 348 U.S. at page 220, 75 S. Ct. at page 246: "The landlord had a lien other than a mortgage, pledge or judgment lien. As to all other liens, such as the distress lien in the instant case, § 3672 of the Internal Revenue Code, 26 U.S.C.A. § 3672, affords no protection. United States v. Security Trust & Sav. Bank Co., 340 U.S. 47, 51, 71 S.Ct. 111, 113, 95 L.Ed. 53 (concurring opinion). Cf. United States v. Gilbert Associates, Inc., 345 U.S. 361, 362–365, 73 S.Ct. 701, 702, 703, 704, 97 L.Ed. 1071. * * * such a lien was only a *caveat* of a more perfect lien to come, as we have so often held in other cases. United States v. Security Trust & Sav. Bank Co., supra; United States v. Gilbert Associates, Inc., supra; United States v. Waddill Co., supra, 323 U.S. at pages 357–359, 65 S.Ct. 304, 306, 307; People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754."

In United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, the question arose as to whether the Government should prevail over certain tax and water service liens of the city. As to the tax liens, the Connecticut statute provided that real estate taxes "shall take precedence over all transfers and encumbrances." The Court held that, though the Supreme Court of Errors' holding that the city's lien was specific and perfected was not conclusive against the federal government, it accepted the holding as to the city's liens, inasmuch as they attached to specific pieces of real property for the taxes assessed. The Court said 347 U.S. at page 84, 74 S.Ct. at page 369: "The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—". The Court held that the priority of each statutory lien contested was dependent upon the time when it attached to the property in question and became choate. Citing its earlier opinion in United States v. Security Trust & Sav. Bank Co., it again defined inchoate liens which may become certain as to amount, identity of the lienor, or the property subject thereto only at some subsequent time. The court was dealing with two classes of State and City claims, including real estate tax liens and water-rent liens, and in the end remanded the cause, saying, 347 U.S. at page 88, 74 S.Ct. at page 372: "Under the circumstances, we vacate the judgment of the Supreme Court of Errors of Connecticut and remand the case to that court to have determined the order of priority of the various liens asserted, in accordance with this opinion." The latest case in the Supreme Court is United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, reversing United States v. Colotta, 79 So.2d 474, where the Supreme Court of Mississippi had declared a mechanic's lien superior to the federal tax lien. Inasmuch as the notice of a mechanic's lien did not fulfill the requirements necessary to give it priority over the lien of the federal tax fixed by People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 363, 371, 375, 67 S.Ct. 340, 91 L.Ed. 348, I think the government should prevail.

The *lis pendens* argument should fail also, I think, for the reason that it is merely an attempt, under a different name, to assert priority of an unperfected lien. See United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

I would reverse the judgment.